TOLSON'S HEIRS v. WILLIAM MAINOR and wife.

*Possession—Title—Royal Grant—Words of Inheritance—Evidence.*

1. The actual title to land will draw to it such a constructive possession as will ripen, by lapse of time, into an independent title, in the absence of evidence of an adverse possession by some other party.

2. A royal grant of land in this state, issued prior to the revolution, will be presumed to be in fee, though the abstract of such grant contains no words of inheritance.

3. When both the plaintiff and the defendant in ejectment derive their title from the state, but under grants of different dates, it is competent for the defendant to show title out of the plaintiff by establishing a prior valid grant from the state to another party, though he fail in an effort to connect himself with such elder title.

(*Clarke* v. *Diggs*, 6 Ired., 159 ; *McLenan* v. *Chisholm*, 64 N. C., 323 ; *Taylor* v. *Shuford*, 4 Hawks, 116, cited and approved.)

CIVIL ACTION to recover land tried at Spring Term, 1881, of CARTERET Superior Court, before *Graves, J.*

On the trial the plaintiffs, in support of their title, offered in evidence a grant from the state, covering the land in dispute, dated in 1872. It was admitted the defendants were in possession. The defendants then introduced a grant from George II., King, &c., to David Shepard, dated April 20th, 1745, a deed from said Shepard to John Harman and his heirs, dated March, 1746, a deed from said Harman to John Saunders and his heirs, dated June, 1763, a deed from John Saunders to John Benthal and his heirs, dated July 5th,

1763, a deed from Jacob Benthal and others to John Canna-
day and his heirs, a deed from Joseph C. Bell, sheriff, to
Elijah Cannaday and his heirs, dated August 1st, 1807, a
deed from Elijah Cannaday to Littleton Martin and his
heirs, dated March 20th, 1832. It was admitted that the
feme defendant was the daughter and heir of Littleton
Martin.

The defendants offered evidence tending to show that
they and those under whom they claimed had had posses-
sion of the land under known and visible boundaries for
more than thirty years, and the plaintiffs on the other hand
here introduced proof tending to show that the defendants
had not had possession of the land for twenty years under
known and visible boundaries and had not been in adverse
actual possession seven years before suit brought. The evi-
dence offered by the defendants in regard to the location of
the deeds under which they claimed was conflicting. There
was no evidence of the death of Shepard.

In charging the jury the court called their attention to
the grant from King George II. to David Shepard, and said,
" as the word ' heirs' was not in the grant it conveyed title
to Shepard only for his life, and so far as that was concerned
it could not be color of title for more than the life of Shep-
ard, so that for all the purposes of this suit, it was not nec-
essary for the jury to consider it. The court then explained
that possession up to known and visible metes and bounds
without any deed at all would give a good title. That the
other deeds were all sufficient to be color of title, and that
possession up to known and visible boundaries for twenty-
one years would divest title out of the state, and give a good
title although no grant had been issued."

The defendants asked the court to instruct the jury, " that
the grantees in the deeds were presumed to have possession
of the land conveyed by the deeds, nothing appearing as to
possession." This the court declined to give, and said, " ac-

tual title will draw to it the constructive possession, but to originate title by possession under color there must be actual possession."

Verdict and judgment for plaintiff, appeal by defendants.

*Messrs. Allen & Isler* and *H. R. Bryan*, for plaintiffs.

*Messrs. Green & Stevenson* and *Mason & Devereux*, for defendants.

ASHE, J. We think the defendants were entitled to the instruction asked, with reference to some of the grantees or donees in the grant or deeds offered by them in evidence, and that it was error in the judge to have declined to so instruct the jury. It is true His Honor, while declining to give the instruction as asked, did tell the jury that "actual title will draw to it the constructive possession," but he had just remarked to the jury that the royal grant to Shepard "conveyed to him only the life estate, that it was color of title only for his life," and of course it must follow as a consequence, and the jury must have so understood him, that if he was dead, the mesne conveyances from him, gave no actual title, and therefore those claiming under him could not have a constructive title.

There was a good deal of discussion in this court whether the grantee, Shepard, who lived one hundred and fifty years ago, is in law presumed to be dead. If the absence of a person for seven years without being heard from will presume a person's death, the presumption will hardly be weakened after the lapse of one hundred and fifty years.

But for the purposes of this trial it was perfectly immaterial whether Shepard is dead or alive. If alive, he has, been in the constructive possession of the land since 1745 the date of the royal grant; but if dead, those claiming under him, by an unbroken chain of titles, or their heirs, have had the constructive possession, unless some one has had the

adverse consecutive possession for at least seven years. The plaintiffs do not pretend that they or their ancestor have ever had possession.

The gist of the error consists in telling the jury that the grant from King George conveyed only a life estate to Shepard. The grant offered in evidence was a copy from the Secretary of State's office of an abstract of grant made by George II, king, &c., to David Shepard, which is as follows:

"George the second, &c., to all whom, &c.: Know ye that we, &c., have given unto David Shepard six hundred and forty acres of land in Carteret county, on Bogue Sound: Beginning on John Herman's corner, a pine, thence binding on the sound various courses 300 poles to a pine, Charles Cogdale's corner, so binding on his line 180 poles to Newell Bell's line, so binding on his said line 160 poles to a pine, then N. 160 poles to a pine, then N. 75 west 170 poles to a pine, then S. 12 west 172 poles, so binding on John Herman's line to the first station, to hold, &c. Dated the 20th day of April, 1745."

(Signed)        GAB. JOHNSTON.

A large portion of the titles to lands in this State are traceable to royal grants like this. The grants were never, we believe, recorded in full, but only abstracts of them were enrolled, and these have been uniformly received and recognized in our courts as evidence of title. *Clarke* v. *Diggs* 6 Ired., 159; *McLenan* v. *Chisolm*, 64 N. C., 323. In this last case the abstract offered in evidence read: "Sampson Williams 300 acres. Anson Mountain Creek, beginning at a pine, (then tracing the boundaries). May 24th, 1873."

(Signed)        Jo. MARTIN.

The abstract was rejected as evidence in the court below, but on appeal it was held to be error, PEARSON, C. J., saying that "His Honor erred in rejecting the abstract of the grant. From the abstract it appears with the requisite certainty that Sampson Williams was the grantee, Governor

MARTIN the grantor, the three hundred acres of land therein described, the subject of the grant, and that a grant was executed May 24th, 1773." In that abstract there were no words of inheritance used, and yet the Chief Justice treated it as passing the absolute estate. In examining the registry books in the office of the secretary of State, we think it will be found that only abstracts of the grants are enrolled, and those made prior to the year 1776 contain no words of inheritance. But since that time it has been the practice of our secretaries of State to set forth the words "heirs" in the abstracts.

But no one at this day will seriously contend that all the royal grants issued by the king of England before the Revolution to his subjects in this colony, from which so many of our titles to real estate are derived, passed only life estates to the grantees. The word *heirs* was not inserted in the abstracts, we suppose, for the reason that the sovereign never granted land for life, and that it would be presumed they were be in fee simple.

The omission of the word "heirs" in this case could not have been an accident, for in this respect it is just like all the other abstracts. But it may be insisted that the error did not affect the plaintiffs' case as they failed to connect themselves with the royal grant. We think, however, it may have very materially affected their case, for if the grant to Shepard conveyed to him the fee simple title to the land, as we have no doubt it did, the legal title is still in his heirs or assigns or their representatives, unless it can be shown that the title has passed back to the state by confiscation or other means, as was the case with the royal grant to LORD GRANVILLE. *Taylor* v. *Shufford*, 4 Hawks, 116. But nothing of the sort is shown here.

The state then, in 1872, when the grant to the plaintiff was made, had no title to the land, and the state "cannot any more than an individual grant that which it has not."

*Taylor* v. *Shufford, supra.* But this is upon the assumption that the land in dispute is covered by both the grants—that made by the state to the plaintiffs and the royal grant to Shepard. As the statement of the case shows there was much conflicting testimony upon the question of location, we are unable to see how that was, but however it may be, there was error in the instruction to the jury, and " where there is error, its *immateriality* must clearly appear on the face of the record, in order to warrant this court in treating it as surplusage." *McLennon* v. *Chisolm, supra.*

There is error. Let this be certified to the superior court of Cartaret county that a *venire de novo* may be awarded.

Error.                                        *Venire de novo.*