## JAMES H. AYCOCK v. RALEIGH & AUGUSTA AIR-LINE RAILROAD.

*Evidence—Copy of Grant—Landlord's right to damages to land—Railroads, negligence of.*

1. A copy of a grant from the register's office, which affirmatively shows that it was issued under the great seal of the state is admissible in evidence, though the registry does not show the impress of the seal, or scroll to indicate it.

2. While the seal in such case may be necessary to authenticate the grant, yet it will be assumed that it was affixed as the law requires.

3. A party, through his tenant, is *prima facie* the owner of the land, in the absence of other evidence, and is entitled to recover damages done to his possessory rights.

4. Where a railroad company permits dry grass or leaves or other combustible rubbish to remain near its track, and the same take fire from ignited sparks emitted from one of its locomotives which had no spark-arrester, and the fire is thereby communicated to the plaintiff's adjoining land, destroying timber, &c.; *Held*, that the injury resulted from the negligence of the defendant company.

5. The negligence is presumed from the facts proved in this case, and the burden is upon the defendant to show that the locomotive was provided with the usual and proper appliances to avoid injury from the escape of burning sparks, and that there was no fault on the part of those managing the train.

6. In such a case, no contributory negligence can be imputed to the plaintiff, the injury being done to land and "the same condition of things" existing.

7. It was negligence to permit the inflammable material in which the fire begun, to remain so near the company's track and liable to ignite from emitted sparks.

8. The defendant company is liable for the consequences of mismanagement of a train in charge of the employees of another company using its track with defendant's knowledge and consent.

9. The suggestion that the complaint does not disclose a cause of action, in that, it does not negative concurring negligence in the plaintiff, has no force; the injury is to land and no agency of the plaintiff could have averted it.

21

10. Remarks of the court in *Owens* v. *Railroad,* 88 N. C., 502, to the effect that the defendant must show concurring negligence in the plaintiff, approved.

(*Candler* v. *Lunsford,* 4 Dev. & Bat., 407 ; *Clark* v. *Diggs,* 6 Ired., 159 ; *McLean* v. *Chisholm,* 64 N. C., 323 ; *Strickland* v. *Draughan,* 88 N. C., 315 ; *Ruffin* v. *Overby, Ib.,* 369, and cases cited ; *Osborne* v. *Ballew,* 12 Ired., 373 ; *Lamb* v. *Swain,* 3 Jones, 370 ; *Ellis* v. *Railroad,* 2 Ired., 138 ; *Herring* v. *Railroad,* 10 Ired., 402 ; *Scott* v. *Railroad,* 4 Jones, 432 ; *Anderson* v. *Steamboat,* 64 N. C., 399 ; *Doggett* v. *Railroad,* 81 N. C., 459 ; *Durham* v. *Railroad,* 82 N. C., 352 ; *Troxler* v. *Railroad,* 74 N. C., 377 ; *Owens* v. *Railroad,* 88 N. C., 502 ; cited and approved).

CIVIL ACTION tried at Spring Term, 1883, of RICHMOND Superior Court, before *MacRae, J.*

The defendant company appealed from the judgment of the court below.

*Messrs. J. D. Shaw* and *Burwell, Walker & Tillett,* for plaintiff.
*Messrs. Fuller & Snow,* for defendant.

SMITH, C. J. This action is to recover compensation in damages for the destruction of timber and other injury done to the plaintiff's land from fire, alleged to have been communicated by sparks escaping from the smoke-stack of an engine running on the defendant's road, in the month of March, 1878. Three issues extracted from the pleadings were submitted to and passed on by the jury.

1. Is the plaintiff the owner of the land described in the complaint?

2. Did the defendant negligently set fire to the timber on the plaintiff's land, and thereby damage the same?

3. If so, what are the plaintiff's damages?

The jury answered the two first inquiries in the affirmative, and, responding to the latter, assessed the damages at three thousand seven hundred and forty dollars.

In order to show title in the plaintiff to the injured land, which was then in possession of one D. N. Cameron, a tenant of the plaintiff under a lease of one year, and at the time of the fire

engaged in making turpentine, he introduced copies duly certified from the registry of deeds of two grants from the state, one dated in February, 1854, and conveying six thousand five hundred acres to J. P. Leak, the other dated in May of the same year, conveying eight hundred and fifty acres to one Freeman, and showed a deed from Freeman to Leak for the latter tract, and then a deed from the latter conveying both tracts to the plaintiff, these being the lands described in the complaint.

The defendant's counsel objected to the admission of copies of the grants, because upon an inspection of the registry, no impress of the great seal of the state and no scroll or figure to indicate its presence were found with the registration. The court overruled the objection and permitted the copies to be read. The exception to this ruling is the first presented in the record that requires examination.

1. The earlier grant, as copied on the register's book, the other differing in this particular only in date, contains the following concluding clause:

"In testimony whereof, we have caused these, our letters, to be made patent, and *our great seal to be hereunto affixed.* Witness, David S. Reid, our Governor, at Raleigh, the 17th day of February, in the 78th year of Independence, and in the year of our Lord one thousand eight hundred and fifty-four.

DAVID S. REID.

By command:

Wm. HILL, Secretary of State.

Recorded in the Secretary's office.

Wm. HILL, Secretary."

It thus affirmatively appears that the grants were issued under the great seal, and this is shown in the registration. As the purpose of requiring registration is to give notice of the terms of the deed, and this is fully accomplished in the registry, we can see no reason why some scroll or attempted imitation of the form of the seal should be required in addition to the words spoken in the grant. The registry furnishes all the information that

could be derived from an examination of the original, as both utter one and the same language.

2. If in construing the several sections relating to grants and the seal of the state, found in the Revised Code, ch. 53, §18, and ch. 42, §§22 and 24, the seal is necessary in authenticating the grant, it will be assumed to have been affixed, as the law requires, since certified copies, and even abstracts from the secretary's office, not showing the presence of tee seal, are admissible in evidence. *Candler* v. *Lunsford*, 4 Dev. & Bat., 407; *Clarke* v. *Diggs*, 6 Ired., 159; *McLean* v. *Chisholm*, 64 N. C., 323; *Love* v. *Harbin*, 87 N. C., 243; *Strickland* v. *Draughan*, 88 N. C., 315; *Tolson* v. *Mainor*, 85 N. C., 235.

But no harm has come to the defendant by the reception of the copies of the grants, since, under the deed from Leak, the plaintiff was in law in possession through his tenant of all the land therein described up to the boundaries, and, in the absence of other evidence, *prima facie* the owner; and he may recover for all the damage done to his possessory and proprietary rights. *Jackson* v. *Commissioners*, 1 Dev. & Bat., 177; *Ruffin* v. *Overby*, 88 N. C., 369; *Osborne* v. *Ballew*, 12 Ired, 373; *Lamb* v. *Swain*, 3 Jones, 370.

The other exceptions are to instructions asked for the defendant and refused, and to those given to the jury instead, upon the testimony of the witnesses. Without stating the evidence, in unnecessary detail, relating to the origin of the fire, it was shown on the trial that two trains of cars, the latter, if not both, belonging to the Carolina Central raiload company, passed over the track of the defendant's road on the day of the conflagration in the afternoon, and that shortly after the passing of the last train a fire was discovered, some 15 or 20 feet from the end of the cross-ties and on the land appropriated to the defendant for right of way, burning the grass and leaves that were there collected and were dry and inflammable. Efforts were made to put it out that at first appeared to be successful, but the wind fanned the flames until they reached and swept over, with uncon-

trollable fury, from 200 to 300 acres of the plaintiff's land, consuming and injuring the timber thereon and doing great damage thereto.

It was in proof that the last train moving over the road, from which the fire is supposed to have proceeded in ignited sparks falling upon the dry and combustible material near the track, belonged to the Carolina Central railroad company, and was managed exclusively by its officers and agents. There were no business relations between it and the defendant, and it was using the defendant's road on this occasion with its permission, or, in the language of one of the witnesses, "by courtesy."

There was no inquiry made of the engineer of this train, when examined as a witness, and no information extracted from the testimony of any one, as to the careful management of this train on that occasion, or that the smoke-stack of the engine was provided with a sufficient spark-arrester, or other modern appliance, to guard against the emission of large and dangerous sparks, while it was shown that combustible rubbish, consisting of dry grass and leaves, had accumulated near the defendant's track.

Upon this general summary of the testimony, sufficient to present the questions of law involved in the instructions refused and given, though it was full and minute in reference to the first discovery of the fire, its rapid spread and devastation, and the ineffectual efforts made for its suppression, the defendant asked that the jury be instructed:

1. There was no evidence that the fire was caused by the defendant.

2. Nor, if so, by the defendant's negligence; and

3. There was no proof offered of the insufficiency or bad condition of the locomotive, nor of mismanagement or want of due skill and care in the running of the train, and the plaintiff was not entitled to a verdict.

The judge declined so to charge, and directed the jury as follows:

You must be satisfied from the preponderance of the evidence

that the fire was communicated from the passing train, to which running the witnesses have testified; and it is not material whether it belonged to the defendant or to another company permitted to use its track. If the defendant allowed grass or other combustible material to collect and remain near its road-bed on land over which it had a right of way, with other combustible material, thence extending to the adjacent forests and fields, so as to expose them to damage from the ignition of such unremoved inflammable rubbish on its own land, it would constitute negligence in the defendant. If these facts are found, it devolves on the defendant to show that the engine was properly equipped, was provided with usual and proper appliances to avoid doing injury from the escape of burning sparks, and that reasonable precautions had been taken to guard against damage to others; if not thus furnished, and the fire was conveyed from the smoke-stack, and escaping thence through contiguous and continuous dry grass and leaves, to the plaintiff's premises, then there was negligence and the plaintiff should have a verdict.

No point was made in respect to the measure of damages. Upon the return of the verdict and the rendition of judgment the defendant appealed.

The exceptions to the instructions given, negativing those proposed for the defendant, present, in substance, these inquiries:

1. Do the facts proved raise a presumption of negligence to be repelled by the defendant, or was the plaintiff required to go further and show wherein the negligence consists?

2. Was the unremoved combustible matter near the track, in being suffered to remain, negligence in the defendant?

3. Is the defendant responsible for the acts of the officers and agents of the other company operating the train, and using the defendant's road with its knowledge and consent?

4. Was there evidence to warrant the finding that the fire was caused by the passing locomotive?

We are clearly of opinion that there was evidence warranting the conclusion of the jury that the fire was caused by the train

whose passage immediately preceded its discovery, in the absence of any other suggested origin. Without recalling the testimony bearing upon the point, we proceed to notice the other exceptions.

In the early case of *Ellis* v. *Railroad*, 2 Ired., 138, where the action was to recover damages for a fence set on fire and burned by a passing locomotive, the court say, GASTON, J., delivering the opinion : " We hold that where he (the plaintiff) shows damage resulting from their (the defendants') act, which act, with the exertion of proper care, does not ordinarily produce damage, he makes out a *prima facie* case of negligence, which cannot be repelled but by proof of care or of some extraordinary accident which renders care useless."

This rule has been restricted with the subjoined qualification, " things remaining in the same condition," and held not to be applicable to the case of a slave run over while lying on the track by the defendant's train, *Herring* v. *Railroad*, 10 Ired., 402, nor when the injury was done to a straying cow under the attending circumstances, *Scott* v. *Railroad*, 4 Jones, 432, the difference being that the same condition of things did not exist as in the case of injury to land, and, therefore, the principle did not apply.

The same proposition enunciated in the case first cited is asserted by TINDALL, C. J., who says that the law requires of railroad companies, in the exercise of the rights and powers conferred upon them, to " adopt such precautions as may reasonably prevent damage to the property of third persons through or near which their railway passes ;" and he adds : " The evidence in this case abundantly shows that the injury, of which the plaintiff complains, was caused by the emission of sparks or particles of ignited coke coming from one of the defendant's engines, and there *was no proof of any precaution adopted by the company* to avert such a mischance. I, therefore, think the jury came to a right conclusion in finding that the company was guilty of negligence, and that the injury complained of was the result of such negligence." *Piggat* v. *Railroad*, 3 Man., Gran. & Scott, 229.

Again, where a barn on the river bank was burned by sparks issuing from the smoke-stack of a passing steamer, which was without a spark-arrester, the injury was held to result from negligence, for which the owners of the boat were liable. *Anderson v. Steamboat Co.*, 64 N. C., 399.

There are many cases in which injury has been done to stock that had got upon the track, where the rule laid down by the court in *Ellis* v. *Railroad* would be inapplicable, and it is held that proof of injury done by the defendant was not alone sufficient to warrant a recovery, without also showing negligence in running the train, or want of reasonable precautions to avoid doing the injury. This was corrected by legislation, in which, if the action is brought within six months, the burden of showing there was in fact no negligence, was put upon the company. Bat. Rev. ch., 16, §11, *Doggett* v. *Railroad*, 81 N. C., 459; *Durham Railroad*, 82 N. C., 352.

These cases are unlike the present, since no negligence absolving the defendant from responsibility can be attributed to the plaintiff, for the same condition of things existed previously, where trains had safely, and without injuring the property of others, run over the road, as on the day when the fire occurred, and hence it devolved upon the party causing the damage, and whose means of information are so much greater, to show in exculpation that there was no fault on the part of the officers and agents operating the train on that particular occasion, and that the fire was accidental. We know of no more salutary and just rule to insure care and precautionary prudence in those whose trains are constantly passing over or near the property of others thus menaced with danger, and to afford full and just protection to the latter. The use of a spark-arrester seems to be more urgently demanded in a country where dry pine wood is used in the furnace, the large ignited sparks from which often are blown a distance from the track and more readily set fire to combustible rubbish in which they may fall. There must be less damage from the use of coal, and, therefore, the need of a

spark-arrester the more imperative. And, besides, the peril is greater from this cause in a forest country, the surface of which in early spring is usually covered with leaves and dry vegetation, from which a fire once commenced would rapidly spread, and, perhaps, as in the present case, soon be beyond control.

Our attention was called in the argument to the case of *Railroad* v. *Schurtz*, decided in 1880, and reported in 2 Am. & En. Railroad Cases, 271, and the copious references in the note annexed to it.

The doctrine there announced by GORDON, J., is, "that if reasonable precautions are taken in providing them (the locomotives) with those appliances which are deemed best for the prevention of such damage (from fire communicated), the company, or persons using them, cannot be made liable, though they fire every rod of the country through which they run." Adding: " That the mere fact of the firing of a property will not of itself prove negligence, *where it is shown that approved spark-arresters were in use.*"

A numerous array of cases are cited in the note in support of each side of the question as to the party upon whom rests the burden of proof of the presence or absence of negligence, where only the injury is shown, in case of fire from emitted sparks. While the author favors the class of cases which impose the burden upon the plaintiff, we prefer to abide by the rule so long understood and acted on in this state, not alone because of its intrinsic merit, but because it is so much easier for those who do the damage to show the exculpating circumstances, if such exist, than it is for the plaintiff to produce proof of positive negligence. The servants of the company must know and be able to explain the transaction, while the complaining party may not; and it is but just that he should be allowed to say to the company, you have burned my property, and if you are not in default show it and escape responsibility.

We therefore sustain the judge in this part of his charge.

Again there was negligence in permitting the inflammable material in which the fire began to remain so near the track and

liable to ignite from emitted sparks. *Troxler* v. *Railroad,* 74 N. C., 377; Whart. Neg., §873; Thom. Neg., 162; *Smith* v. *Railroad,* C. C. P., 14; *Salmon* v. *Railroad,* 20 Am. Rep., 366, and note.

The remaining exception is to the charge that the defendant is responsible for the consequences of the negligence of the servants of the Carolina Central railroad company's trains while using its track.

The cases cited in the well prepared brief of the plaintiff's counsel fully sustain the proposition, that the defendant company, leasing the use of its road or permitting the use of it by another company, remains liable for the consequences of the mismanagement of the train in charge of the servants of the latter, and the injury thence resulting, to the same extent as if such mismanagement was the act or neglect of its own servants operating its own train. *Railroad* v. *Barron,* 5 Wall., 90; *Railroad* v. *Mayes,* 15 Am. Rep., 678; *Abbott* v. *Railroad,* 36 Am. Rep., 572; *Railroad* v. *Salmon,* 23 Am. Rep., 214; *Pierce* v. *Railroad, Ib.,* 283.

But if this were not so, the failure to remove the heap of dry leaves and grass was a negligent omission of a positive duty which itself creates a liability in the defendant also.

It was suggested that the complaint does not disclose a cause of action, as it does not negative a concurrent negligence in the plaintiff. But this is not a case of concurring negligence conducive to the result. The injury is to the land, and no agency of the plaintiff could have averted the disaster unless he removed all the accumulations of dry grass and leaves from the surface upon which they lay, and this he was not required to do at the peril of losing all redress for the injury directly springing from the defendant's neglect. In a late case, while considering this subject, the court adopted the proposition as a fair deduction from the adjudications, that if, in disclosing the facts which constitute the defendant's negligence, it does not appear whether the plaintiff exhibited the necessary watchfulness and care to avoid the consequent harm or injury, it will be assumed there was no

such want of it on his part; and if the plaintiff in any legal sense were the cause or the concurring cause of his own injury, the duty if so showing in self-exculpation devolves upon the defendant. *Owens* v. *Railroad*, 88 N. C., 502. It was not the plaintiff's duty to do more than prove the injury flowing from the defendant's act or omission; and matter in excuse must come from the wrong-doer.

Upon a calm review of the whole case, we see no error in the ruling of the judge, made matter of exception in the record, and the judgment must be affirmed.

No error. Affirmed.