MICHAEL C. BRASLIN *vs.* SOMERVILLE HORSE RAILROAD COMPANY.

Middlesex.   January 17. — September 19, 1887.

A street railway corporation was made liable by its charter for any injury that any person might sustain by reason of any carelessness, negligence, or misconduct of its agents and servants, in the management, construction, or use of its tracks. Subsequently, the corporation leased to another street railway corporation a certain portion of its track for the unexpired term of its charter, subject to all duties and liabilities imposed upon the lessor by its charter, and the lessee covenanted to assume and perform them, and to defend any suits brought against the lessor arising out of the operation and use of the road, and to pay any judgment recovered against the lessor.   The lessee further agreed to deliver the property to the lessor at the end of the term, and there was a provision for re-entry for breach of covenant.   The lease was afterwards ratified by an act of the Legislature.   After this, a passenger on a car of the lessee while on the leased road was injured by the negligence of a servant of the lessee.   *Held*, that an action could be maintained against the lessor for such injury.

TORT for personal injuries.   At the trial in the Superior Court, before *Blodgett,* J., it appeared that the defendant owned a horse railroad on Elm Street, in Somerville, which connected with the horse railroad of the Cambridge Railroad Company; that on November 30, 1882, the same was used and operated by the Union Railway Company under certain leases and contracts; and that on said day the plaintiff was a passenger upon a car of the Union Railway Company, and received the injuries complained of by being thrown from the car upon Elm Street.

There was evidence tending to show that the injuries complained of were occasioned by the negligence of a servant of the Union Railway Company, who was then driving the car in which the plaintiff was a passenger.

The leases and contract under which the railroad was run at the time of the accident were put in evidence, and appear in the opinion.

The judge ruled that the plaintiff could not maintain his action, directed a verdict for the defendant, and reported the case for the determination of this court. If the ruling was right, judgment was to be entered on the verdict; otherwise, the case was to stand for trial.

*G. A. Bruce,* (*M. F. Farrell* with him,) for the plaintiff.

*Samuel Hoar,* (*W. H. Martin* with him,) for the defendant.

C. ALLEN, J. The question presented by the report is, whether the plaintiff's right of action, if any, is against the defendant, or exclusively against the Union Railway Company, another street railway company, which was operating the defendant's road under the assignment of a lease. The presiding justice in the Superior Court ruled that the plaintiff could not maintain his action against the present defendant, and reported the case for the determination of this court, upon facts which were not in dispute. Those facts, so far as material, are as follows:

The Middlesex Railroad Company was incorporated by the St. of 1854, *c.* 434, with power to construct a street railway; and by § 5 was made liable " for any loss or injury that any person may sustain by reason of any carelessness, neglect, or misconduct of its agents and servants, in the management, construction, or use of said tracks, roads, or bridges." The Somerville Horse Railroad Company, the defendant in this action, was incorporated by the St. of 1857, *c.* 250, to receive a transfer of the franchise and property of the Middlesex Railroad Company in the town of Somerville; and, upon such transfer being made, the Somerville Horse Railroad Company was to stand in the place of the Middlesex Railroad Company, so far as the road in Somerville was concerned; and the duties, liabilities, and burdens imposed on the Middlesex Railroad Company were transferred from said company and imposed upon the Somerville

Horse Railroad Company. This transfer appears to have been carried into effect; and the defendant was in possession accordingly.

In April, 1871, a tripartite agreement was entered into between these two companies and the Union Railway Company, whereby, among other things, the Somerville Horse Railroad Company agreed to lay a new street railway track on Milk Street and Elm Street in Somerville, and, on the completion thereof, to lease the same to the Middlesex Railroad Company; and on January 5, 1876, in order to carry into effect the above agreement, a lease thereof was executed accordingly, for and during the unexpired term of the lessor's charter, " upon the like terms and conditions, and with all the rights and privileges, contained in a certain written instrument, bearing date the 1st day of June, A. D. 1869, and duly executed by the said Middlesex Railroad Company and the said Union Railway Company." This lease did not include the whole of the railroad of the lessor, and no mention was made therein of the lessor's franchise.

Referring now to the instrument of June 1, 1869, in order to ascertain the terms and conditions of the above lease, it appears that it was a lease from the Middlesex Railroad Company to the Union Railway Company of a certain piece of street railroad in Somerville, theretofore built by the Somerville Horse Railroad Company, and by it leased to the Middlesex Railroad Company; and the lease of June 1, 1869, was made " subject, however, to all the conditions, restrictions, duties, and liabilities imposed upon the said Somerville Horse Railroad Company by its charter, and its contracts and agreements." The lessee was to pay a certain rent and all taxes; and it agreed to " assume and perform all duties imposed upon the Somerville Horse Railroad Company, by its charter, save those incident to its organization and continuance," and further to " keep said railroad in good repair during said term, and to run and operate the same in such proper and careful manner as the public safety and convenience may require, and that it, the party of the second part [i. e. the lessee], at its own cost will defend any and all suits of any kind brought against said Somerville Horse Railroad Company and the party of the first part, severally, on account of injuries to person or property, and any loss of property happening, or which

may arise out of the operation and use of said railroad during said term, and any acts and neglects of said party of the second part and any persons in its employ, and will pay and discharge all judgments recorded against them or either of them in such suits." The lessee further agreed to deliver to the lessor, at the expiration of the term, the said property; and there were provisions for re-entry for breach of covenant.

The lease of January 5, 1876, from the Somerville Horse Railroad Company to the Middlesex Railroad Company, was assigned by the lessee to the Union Railway Company, on February 1, 1876, subject to all the liabilities, duties, and conditions contained in said lease; and the assignee covenanted to do and perform all the duties and services, and assume all the risks and liabilities, and perform all the covenants and agreements, imposed by said lease upon the lessee named therein.

At the time when the plaintiff received the injuries complained of, the railroad, at the place of the accident, was used and operated by the Union Railway Company under the above-mentioned lease and assignment, which, by the St. of 1876, *c.* 53, were ratified, confirmed, and declared valid; and all acts and proceedings theretofore done under and in accordance therewith were declared valid and legal.

The question presented for determination is, whether, by means of the above-mentioned instruments and statutes, the Somerville Horse Railroad Company is exonerated from responsibility to a person injured upon that part of its railroad which it leased to the Middlesex Railroad Company on January 5, 1876. There is perhaps no reason to doubt that the Union Railway Company would be responsible; but we are to determine whether the Somerville Company is also responsible.

The general rule is familiar, that neither a steam nor a street railway corporation can make a valid transfer, either by way of absolute deed, mortgage, or lease, of its franchise, or of its railroad and the bulk of its property, or relieve itself of the burdens imposed upon it by law, or by its charter, without the consent of the State. *Commonwealth* v. *Smith,* 10 Allen, 448. *Richardson* v. *Sibley,* 11 Allen, 65. *Central National Bank* v. *Worcester Horse Railroad,* 13 Allen, 105. *Middlesex Railroad* v. *Boston & Chelsea Railroad,* 115 Mass. 347. *Davis* v. *Old Colony Railroad,*

131 Mass. 258, 271. *Railroad* v. *Brown*, 17 Wall. 445, 450. *Bower* v. *Burlington & Southwestern Railroad*, 42 Iowa, 546.

In *Quested* v. *Newburyport Horse Railroad*, 127 Mass. 204, a street railway company had leased its railroad and franchise, under legislative authority to do so, it being expressly provided by statute, however, that such lease should not exempt said company from any duties or liabilities to which it would otherwise be subject. There is no similar express provision in any statute affecting the present case, but on the other hand, we find nothing indicating an intent that the defendant, by means of a lease, should be able to escape from its liabilities and responsibilities to the public.

The provisions of the lease, including those which are incorporated by reference, define the duties and obligations of the contracting parties as between themselves, and appear to be sufficient effectually to bind the lessee to indemnify the lessor against loss. But it is nowhere stated that the lessor should be exonerated from responsibility, nor was it possible for the parties to make a contract which should have that effect. The sanction of the Legislature was given to the contract as made by the parties, but added nothing by way of exemption from the primary responsibility of the lessor. The lease did not purport to transfer the lessor's franchise, or the whole of its property. The lessor was not going out of business entirely, but only leased a portion of its road, with provisions for restoration of the leased property at the end of the term, and for re-entry. It was under a positive duty and obligation to the public, and the consent of the Legislature to the making of the lease did not imply a discharge from the duty and obligation. Indeed, there is a certain implication that the parties did not contemplate any such discharge, arising from the stipulation for indemnity " during said term," that is, during the whole term of the lease. Where a corporation seeks to escape from the burdens imposed upon it by the Legislature, clear evidence of a legislative assent to such exoneration should be found.

We do not overlook the decisions in *Mahoney* v. *Atlantic & St. Lawrence Railroad*, 63 Maine, 68, and in *Murch* v. *Concord Railroad*, 9 Foster, 1, 35, which certainly are rather to the effect that the lessees alone are responsible, under circumstances not

much unlike those in the present case. But we do not find that the lessee was substituted for the defendant in any such sense as to relieve the latter from liability; and the result is, that there must be a new trial. *New trial granted.*