### HARDEN v. NORTH CAROLINA RAILROAD CO.

(Filed December 17, 1901.)

1. NEGLIGENCE—*Master and Servant—Automatic Couplers—Railroads.*

   The failure of a railroad company to equip its freight cars with self-coupling devices is negligence *per se*.

2. LEASE—*Railroads—Damages—Negligence.*

   The lessor of a railroad is liable for the negligence of the lessee in the operation of the road.

   Cook, J., dissenting.

ACTION by C. D. Harden against the North Carolina Rail-

road Company, heard by Judge *George H. Brown* and a jury, at May Term, 1901, of the Superior Court of ROWAN County. From a judgment for the plaintiff, the defendant appealed.

*Overman & Gregory,* for the plaintiff.
*Chas. Price, F. H. Busbee,* and *A. B. Andrews, Jr.,* for the defendant.

CLARK, J.   The plaintiff was a brakeman in the service of the Southern Railway Company (lessee of defendant), on a freight train, and was injured in making a coupling be- tween a box-car and the shanty-car "with a link and the old- style draw-head."   The shanty-car was not equipped with au- tomatic couplers, nor was the train fully equipped with Janney couplers, or other modern self-coupling devices, and the Court charged the jury, citing *Greenlee v. Railroad,* 122 N. C., 977, 65 Am. St. Rep., 734—since followed in *Trox- ler v. Railroad,* 124 N. C., 189, 70 Am. St. Rep., 580, and othe cases—as follows: "If you find that the freight train was not fuly provided with modern self-acting couplers, and that the plaintiff *would not have been injured had the cars been so provided,* you will find the first issue 'Yes' and the second issue 'No.' " . The Judge followed the decisions of this Court, and, without repeating the argument therein, it is sufficient to say that we re-affirm our former rulings holding a railroad company responsible for injuries to its employees which would not have occurred if there had been provided by it those humane devices protecting the lives and limbs of its employees, which are in general use. The reports of the United States Intercommerce Commission, .issued by the authority of the Federal government, show the reduction of many thousands annually in the number of em- ployees killed or maimed in coupling cars since the introduc- tion of automatic couplers (which now is compulsory under the act of Congress as to all interstate roads).   This should

be a sufficient answer to all complaints as to our former rul-
ing.   If the lives and limbs of employees can be saved by
such provision of improved appliances, public policy and hu-
manity require the Courts to exact liability for failure to
furnish them.

The principal point made, however, is in the effort to in-
duce this Court to overrule a still longer line of decisions
which hold this lessor, the North Carolina Railroad Company,
liable for the act and defaults of its lessee, the Southern
Railway Company.   The charter of the North Carolina
Railroad Company, Laws 1848-9, Chap. 82, sec. 19, authorize
the company "to farm out its right of transportation over
said railroad, subject to the rules above mentioned."   There
are no other words from which a right to lease the road can
be inferred.   As at the date of the charter railroads were
comparatively new, and the popular idea was that a railroad
company was to maintain the road-bed and "farm out" rights
of transportation over it, as was the case with canal compan-
ies, and is to-day the case with express companies and many
"fast freight" and "through lines," it was thought by many
that these words did not authorize, and were not intended to
authorize, a lease of its entire property, which lease had the
effect to take it out of a "State system" running from the
mountains to the seacoast under State control, and make it a
part of an interstate line running North and South, under the
control of foreign corporations, to the utter destruction of the
"State system" intended by the charter of the defendant.
The authority to lease, based upon the permission "to farm
out its rights of transportation," came before this Court in
*State v. Railroad,* 72 N. C., 634, and that expanded con-
struction was sustained by a divided Court, Judge Settle
writing the opinion, Judge Bynum dissenting in a remark-
ably able opinion.   Judge Rodman did not sit.   If it were
a new question, this Court might possibly hold with Judge

Bynum as to the reasonable construction of the meaning of the words "to farm out the right of transportation," but the lessee would rely upon the fact that it took its lease relying upon the construction placed by this Court upon the meaning of those words. But it also made its lease subsequent to the decision of this Court—often since repeated—that those words did not allow the lessor to rid itself, by any lease made under authority conferred by those words, of liability for any acts or negligence or torts committed by the lessee as to the world, its passengers or its employees, the latter being held in effect to be simply sub-employees of the lessor, employed by its agent for the operation of the road, its lessee.

In *Aycock v. Railroad,* 89 N. C., 321 (1883), it had been held, Smith, C. J., the authorities "fully sustain the proposition that the defendant company leasing the use of its road or permitting the use of it by another company, remains liable for the consequences of the mismanagement of the train in charge of the servants of the latter and the injury thence resulting, *to the same extent* as if such mismanagement was the act or neglect of its own servants operating its own train," citing the authorities.

In *Logan v. Railroad,* 116 N. C., 940, this very charter of the defendant company was elaborately considered, and in an able opinion by Mr. Justice Avery, concurred in by the entire Court, it was held that no lease made by virtue of the above-cited words—there being no clause of exemption granted to the lessor—would exempt the defendant from liability for the wrongful acts, defaults or negligence of its lessee, and hence that the lessor company was liable for injuries sustained from the negligence of its lessee by a section hand employed by such lessee.

This decision was rendered by this Court at February Term, 1895, and the lessor and lessee, both aware of the construction placed by the Court upon a contract by lessor to

"farm out its right of transportation" on 16th August following executed the lease under which the lessee is now operating the defendant's road.   Both parties had that decision in view, and provided for the liability of the defendant for all the acts and defaults of its lessee by a stipulation in said lease (which lease is filed as a part of the record in this case) for a deposit of "not less than $175,000 in cash, or its equivalent, to be applied" to the performance of the stipulations in the contract to be performed by the lessee, and among them "to any judgment or judgments recovered in any Court of the State or of the United States when finally adjudicated, *for any tort, wrong, injury, negligence, default or contract, done, made or permitted by the parties of the second part,* its successors, assigns, employees, agents or servants for which the party of the first part shall be adjudged liable, whether the party of the first part is sued jointly with or separately from the party of the second part," and further provides to what agents of the lessee notices of such suits shall be given by the lessor when sued singly, and for the renewal and maintenance of said sum whenever diminished by such application of any part thereof.

The lease was made subsequent to the decision of the Logan case.   Both lessor and lessee knew of the continuing liability of lessor under any lease authorized by the words "farm out," as construed by this Court, and stipulated, in view of such liability, a deposit being put up, to be maintained at a fixed sum to guarantee the lessor, the defendant herein.   If the lease is valid because made subsequent to the decision of a divided Court in *State v. Railroad,* 72 N. C., 634, it does not lie in the mouth of the lessor to contend that it does not remain liable for all acts of its lessee in the operation of its road under a lease made subsequent to the decision of a unanimous Court in *Logan v. Railroad,* 116 N. C., 940, especially when it has stipulated against loss therefrom by exacting

a deposit from its lessee. And, in fact, the lessor has not complained. This objection has several times been raised in this Court, but always by counsel of the lessee, and ruled upon again and again, always in conformity to the precedents in Aycock's case, 89 N. C., 321, and Logan's case, *supra*. The defendant has never averred any loss, detriment or probable damage by reason of its being held liable for the acts of its lessee as its agent in the operation of the road. The lessee, the Southern Railway Company, is the only railroad company operating in this State which claims to be a foreign corporation, as we know from the statutes incorporating all others, except possibly one other lessee. It has been stated by its counsel in their place here that the Southern Railway Company has· "domesticated"—but it is unnecessary to discuss here the point which has been decided in *Debnam v. Tel. Co.,* 126 N. C., 831. Whether the lessee be a foreign corporation or not, the lessor when it entered into this lease, knew that by the terms of its charter, as construed by this Court, it would remain liable, notwithstanding such lease, for the acts of its lessee. *Logan v. Railroad, supra,* has been cited and approved on this point, *Tillett v. Railroad,* 118 N. C., at page 1043 ; *James v. Railroad,* 121 N. C., 528 ; *Norton v. Railroad,* 122 N. C., at page 937 ; *Benton v. Railroad, Ibid,* at page 1009 ; *Pierce v. Railroad,* 124 N. C., at page 93 ; *Perry v. Railroad,* 128 N. C., at page 473, and in *Raleigh v. Railroad,* at this term, in most of which cases this defendant was a party.

Had Logan's case not been decided prior to the lease made by the lessor, and stipulations in view thereof made in the lease, and viewed as an original question, it is sustained by the overwhelming weight of authority and upon reason. In 20 Am. and Eng. R. R. Cases Annotated, at page 847, the rule is laid down: "A railroad company which has leased its road, cars and engines,· and allows the lessee company to

operate the same, is liable to third persons or the public for the carelessness and negligence of the lessee, and for defects in the construction and maintenance of the road and its *equipments,* unless there is a statutory provision to the contrary" (and there is none in this case). For this proposition it there cites thirty-six cases from the United States Courts and the Courts of the different States, and from England, and it is not necessary to repeat them here. In *Railroad v. Brown,* 84 U. S., at page 450, the Court says: "It is the accepted doctrine in this country that a railroad corporation can not escape the performance of any duty or obligation imposed by its charter or the general laws of the State by a voluntary surrender of its road into the hands of lessees. The operation of the road by the lessees does not change the relations of the original company to the public," and cites with approval 1 Redf. Railways, to same effect. Also to the same purport are 1 Beach Pr. Corp., sec. 366; 1 Spelling Pr. Corp., 135, and several other authorities cited in *Logan v. Railroad,* 116 N. C., at pages 946 *et seq.*

In *Harmon v. Railroad,* 28 S. C., 401, the words of the charter construed were almost identical with those in defendant's charter, and it was held that a lease made thereunder did not relieve the lessor from liability for the acts of its lessee. In *Bank v. Railroad,* 25 S. C., 216, the same ruling is made as to non-delivery of freight, the Court saying: "We are unable to appreciate the distinction attempted to be drawn by appellant's counsel between the liability of a railroad company which has leased its line to another, to actions *ex delicto* and *ex contractu.* The foundation for such liability is that such company, by accepting its charter, assumed obligations to the community from which it can not absolve itself by leasing its road to another company; and as such carrier is not only under an obligation to carry passengers safely, but also to deliver goods entrusted to it for trans-

portation, we think the same principle which would make the lessor liable in the one case would make it liable in the other."

In *Balsley v. Railroad,* 119 Ill., 68, it is said that the liabilty of the lessor for the acts of the lessee is not merely because the lessee is the agent of the lessor, but further because the lessor in consideration of the grant of its charter undertook the performance of duties and obligations, and it is against public policy for it to be relieved therefrom without the express consent of the Legislature.

In 20 Am. and Eng. R. Cases, at page 848, it is said: "A railroad company which leases its road pursuant to a statutory authority, which does not contain any provision releasing it from the performance of its duties to the public, is liable for personal injuries sustained through negligence in the operation of the road by the lessee. To the same purport are:

*United States.—Thomas v. Railroad,* 101 U. S., 83; *R. Co. v. Brown,* 84 U. S., 445; *R. Co. v. Barron,* 72 U. S., 90; *R. Co. v. Winans,* 58 U. S., 39.

*Georgia.—Singleton v. Railroad,* 70 Ga., 464, 48 Am. Rep., 574; *Railroad v. Moyes,* 49 Ga., 355.

*Illinois.—Railroad v. Dunbar,* 20 Ill., 623; *R. Co. v. Lane,* 83 Ill., 448; *Railroad v. Campbell,* 86 Ill., 443; *Railroad v. Peyton,* 106 Ill., 534; *Balsley v. Railroad,* 119 Ill., 68, 59 Am. Rep., 785; *R. Co. v. Meech,* 163 Ill., 305.

*Maine.—Whitney v. Railroad,* 44 Me., 362; *Stearns v. R. Co.,* 46 Me., 95; *Nugent v. R. Co.,* 80 Me., 62.

*Massachusetts.—Quested v. R. Co.,* 127 Mass., 204; *Braslin v. R. Co.,* 145 Mass., 64 (where the contract of lease is much as in this case).

*Missouri.—Brown v. R. Co.,* 27 Mo., App., 394.

*Nebraska.—Charlotte v. R. Co.,* 26 Neb., 159.

*New York.—Abbott v. R. Co.,* 80 N. Y., 27, 36 Am. Rep., 572.

*North Carolina.—Aycock v. Railroad,* (1883) 89 N. C., 321; *Logan v. R. Co.,* 116 N. C., 940; *Tillett v. Railroad,* 118 N. C., 1043; *James v. R. Co.,* 121 N. C., 528; *Norton v. R. Co.,* 122 N. C., 937; *Benton v. R. Co., Ibid.,* 1009; *Pierce v. R. Co.,* 124 N. C., 93; *Perry v. R. Co.,* 128 N. C., 473; *Raleigh v. R. Co.,* at this term.

*Oregon.—Lakin v. R. Co.,* 13 Ore., 436, 57 Am. Rep., 25. ,

*South Carolina.—Harmon v. R. Co.,* 28 S. C., 401; *Hart v. R. Co.,* 33 S. C., 427; *Bank v. R. Co.,* 25 S. C., 216.

*Texas.—Railroad v. Underwood,* 67 Tex., 589; Railroad *v. Morris, Ibid,* 692; *Railroad v. Morris,* 68 Tex., 49.

*Washington.—Cogswell v. R. Co.,* 5 Wash., 46.

In 71 Am. Dec., 295, it is said by Judge Freeman in his notes: "It is a well-settled doctrine that, in the absence of legislative authority permitting a lease *and exempting the company from liability,* it is responsible for the torts of the lessee"—citing many cases.

In *Nelson v. R. Co.,* 26 Vt., 717, 62 Am. Dec., 614, Chief Justice Redfield says: "As to the liability of the defendants for the acts of their lessees, who were running the defendants' road under a long lease, we think there can be no doubt. Unless we can hold the defendants thus liable, they might put their road into the hands or corporations or individuals of no responsibility."

· If a railroad corporation could relieve itself of liability by leasing, it would follow that leases could be made to another corporation with no tangible assets—as, indeed, the lessee in this case, if a foreign corporation, has none in this State—leaving the travellers and shippers over its line, the general public and its employees alike, without recourse on the property of the corporation which was chartered to operate the road, and which is left in receipt of the rent, which might readily be made high enough to cover the profits. Thus

the company would, by a device of a lease, receive the profits without incurring the liabilities of its business.

In many cases it has been held that a *bona fide* mortgage can not have that effect. *Acker v. Railroad,* 84 Va., 648; *Naglee v. R. Co.,* 83 Va., 707; *Railroad v. Burnett,* 123 N. C., 210, and the rights of mortgagees for money presumably applied to debts are stronger than those of lessors.

· The question here is not the liability of lessees, which also exists, but of the right of the lessor to put off the liabilities incident to the franchise given it, while continuing to enjoy its profits through the medium of a lease. This the corporation owning the property can not do.

No Error.


Cook, J., dissenting. As stated in the opinion of the Court, the principal point raised in this case is to review and overrule the principle heretofore laid down by this Court in the case of *Logan v. R. R.,* 116 N. C., 940. And this being the first time the question has ever been squarely presented for our consideration since I have been a member of the Court, I shall now express my opinion independent of what has heretofore been held, and shall confine my investigation closely to the subject-matter of this case.

The issue is plain: Is the North Carolina Railroad Company, lessor of the Southern Railway Company, lessee, responsible for the contracts and liable for the torts made and committed by the said lessee in the management and operation of its business of *transportation* as a common carrier *under the rights and powers* granted in the *charter* of the former, the North Carolina Railroad Company? This is the principal point to be decided in this case, and arises in an action brought by plaintiff, a brakeman and employee of the Southern Railway Company, to recover damages for in-

juries sustained by him while coupling its cars and while in its employment.

· Regardless of what has been decided upon the statutes of other States, and the liability of railroads operating under various charters under those statutes, let us read the *charter* in this case, introduced as evidence and sent up as a part of the record in this appeal, and consider it as it really is, and place upon it a plain common sense construction according to the true meaning of its terms and the intent of the Legislature which enacted it.

Our first inquiry is directed to the nature and character of the charter with relation to the contracting parties, viz., the State which authorized it on the one part and the citizens or stockholders who paid their money and became a party to it on the other part; next, to the terms expressed therein, and then to the powers, rights and liabilitise under its terms.

The charter having been enacted *prior to the Constitution* · *of 1868*, to-wit, January 27, 1849, it became and was a con- . tract between the State and the company, and can not be amended, changed or repealed, except with and by the consent of both parties. As to the terms, it is unnecessary to set out any part of the charter except sections 18 and 19, which are the only sections material to the decision of this action, the other sections referring principally to the organization and management of the company. Sections 18 and 19 are as follows: "18. That the said company shall have the ex· clusive right of conveyance or transportation of persons, goods, merchandise and produce over the said railroad to be by them constructed, at such charges as may be fixed on by a majority of the directors. 19. That the said company may, when they see fit, farm out their right of transportation over said railroad, subject to the rules above mentioned; and said company, and every person who may have received from them the right of transportation of goods, wares and produce

on the said railroad, shall be deemed and taken to be a common carrier, as respects goods, wares, produce and merchandise entrusted to them for transportation."

The right of the North Carolina Railroad Company to make the lease to the Southern Railway Company is conceded in the opinion of the Court, so this narrows our discussion down to the liabilities resting upon the two parties to this lease. The "exclusive right of conveyance or transportation" granted in section 18, being "farmed out," or leased, under the authority and power granted in section 19, it must necessarily follow under the terms of the lease that all contracts by the lessor of the same ceased, and there could be no relationship of principal and agent existing between the parties; and under section 19 the lessee company "received from them (the North Carolina Railroad Company) the right of transportation," and were "deemed and taken to be a common carrier." And it must likewise follow, as a logical result, that when the *actual* as well as *legal* right of contract ceased under the authority of law, all liability on account of such contract must likewise cease. It would be an anomaly in law to hold one party responsible for the acts of another over whom he had no authority, in fact or by right, and between whom there was no privity of interest.

If this construction of the chartered rights of the North Carolina Railroad be sound in law, then it can not be liable for a contract or tort made or done by the sole owner of the right of transportation. And, therefore, it is my opinion that the plaintiff is not entitled to recover against the defendant company.

The question of liability incident to the *corpus* or management of the physical structure of the property owned by defendant company under its charter, and upon which the transportation depends, does not arise in this action.

At this term of the Court, in *City of Raleigh v. N. C. Rail-*

*road Co.,* we have in a measure passed upon that question, but such liability is not involved in this case.

The case of *Aycock v. Railroad,* 89 N. C., 321, is not an authority in this case. There, the Carolina Central Railroad Company was running its engines and trains over the track of the Raleigh and Augusta Air-Line Railroad Company, simply by its permission and by courtesy; and, by reason of the accumulation of grass, leaves and other inflammable matter upon the land appropriated to the defendant for right-of-way, fire was transmitted to it from a defective spark-arrester and it ignited, and then the fire spread to the plaintiff's land, doing the damage complained of. It was not there contended, nor was it a fact, that the defendant company had sold or leased its exclusive right to run trains over the road.

The foundation upon which the plaintiff's action rests is the case of *Logan v. Railroad,* 116 N. C., 940, and if the doctrine therein laid down be sound law, then his action must be sustained, and the other cases following it, which are its offspring, must stand.

Much is said about the original obligation of the lessor company to the public in furnishing trains, providing for the safety of passengers, etc., which is said to be inseparable from the grant and the exercise of the corporate privileges, and from the road-bed, right-of-way, station-houses, etc., until the Legislature, for the sovereign, declares the lessor absolved from it. All of which seems to have been said and discussed upon *general* principles based upon the numerous decisions of other States, but the construction of the *contract* between this State and the defendant company, *sections 18 and 19 of the charter,* seem to have been smothered and forgotten under the weight of so many authorities. No reference is made to the power of the sovereignty to grant a franchise which may be separated or divided in its exercise and enjoyment between

two or more parties or corporations; nor of its power to grant a delegation of power. Under sections 18 and 19, the grant carried with it the right of delegation as to the active transportation, without divesting the defendant compnay of the remaining franchise without which the former could not exist. To my mind, it is clear that the lessee in this case is exclusively responsible for liabilities incurred in the active operation of the road in exercising the "right of transportation" (which they were authorized to lease), whether it arises *ex contractu* or *ex delicto;* and that the lessor company is responsible for the liabilities arising from the *corpus*—the structure and all of its incidents—which, under the terms of the charter and the franchise therein granted, it is bound to preserve and properly keep for the benefit of the public for its safety while the right of transportation is being exercised.

If there be a single authority cited in Logan's case, or one cited in the opinion of the Court, to sustain the contention of plaintiff in this case, I am unable to so understand it, except possibly the one single case of *Hammon v. Railway,* 28 S. C., 401 (on page 404), which cites and relies upon *Railway Co. v. Brown,* 17 Wall. (84 U. S.), and upon examining the facts and principle therein involved, it will be found not to sustain the decision. I have examined each and every case cited in 1 Spellings on Private Corporations, sec. 135, quoted in Logan's case as an authority, and I find the facts and principles involved in the decisions to be so different that they fail to sustain the conclusion reached by the Court. For instance, I will briefly state the principles decided in some of the cases there cited, as well as some of the cases cited in the opinion of the Court as authority, from which it clearly appears that they do not sustain the decision of the Court: In the case of *Railway Co. v. Brown,* 17 Wall. (84 U. S.), cited by Redfield on the Law of Rail-

.ways (5th Ed.), Chap. 22, page 616, and other authors, and so often cited in the opinions of the Courts to which reference has been made, as an authority that the lessor can not divest itself of its liability as a common carrier by leasing its road, it expressly appears that the corporation (railway company) had leased its road to two individuals, and that no authority appears to have been given, either by its charter or legislation, and that the injury complained of was committed while it was being operated by the servant (jointly with those of the receiver) of the said lessees, and the rule of *principal and agent* there obtains.

And the *only* case I have been able to find which squarely supports Logan's case is that of *Hammon v. Railway Co.,* 28 S. C., 401, on page 404, which cites the above case (17 Wallace) for its authority, and in it the learned Justice McIver seems to have accepted the decision of the Court without investigating the facts upon which it was based, and therefore failed to discover the principle upon which the decision was made.

In *Bank v. Railway Co.,* 25 S. C., 216, on page 222, the Court says: "In this case, however, it appears that defendant company (lessor), by its own agent and not its lessee, receipted for the cotton, and hence the contract must be regarded as made directly with defendant company (lessor), though its road may at the time have been operated by the Richmond and Danville Railroad Company, its lessee."

In *Thomas v. Railroad,* 101 U. S., 71, the lease was made without authority of its charter or of law, and was *ultra vires* and void.

In *Great Western Railway Co. v. Blake,* 7 Hurlstone and Norman, 986, there were two connecting lines, and by arrangement between the two companies the lines were worked together and tickets sold over the whole route and the fares paid by passengers apportioned between them; held, that the

company selling the ticket is responsible for negligence and damage done upon and by the connecting line.

In *Nuget v. Railroad,* 80 Me., 62, defendant company leased for ninety-nine years its railroad, stations, etc., to another company. While being operated by the lessee, one of the lessee's brakemen was injured, *solely* caused by a *negligently constructed awning* upon one of the *station-houses.* The awning was negligently constructed on account of its proximity to the passing car, and the injury was caused solely thereby; held, that lessor was liable on that account.

In *Stearns v. R. Co.,* 46 Me., 95, on p. 117, it there appears that in the statute "authorizing the defendants to lease their road, it was enacted that nothing contained in said act, or in any lease or contract entered into under the authority of the same, should exonerate the said company or the stockholders thereof from any duties or liabilities therein imposed upon them by the *charter* of said company, or by the *general laws* of the State. * * * Whatever duties or liabilities therefor were assumed by defendants by the acceptance of their charter, or afterwards rightly imposed upon them by the laws of the State, were at least for the purpose of a remedy, to remain and continue to be obligatory upon them in the same manner and to the same extent as if the lease had not been executed, and the use, possession and management of their property had not been transferred to their lessees."

In *Whitney v. Railroad,* 44 Me., 362, 69 Am. Dec., 103, one of the *chartered* obligations of the defendant was to erect, maintain, etc.,legal and sufficient fences where the road passed through enclosed and improved lands, and in default they are liable for injuries occasioned thereby; held, that it was not released from its obligation by leasing its road. And it was enacted and provided by the Legislature,permitting the transfer; that "nothing contained in this act, or in any lease or contract that may be entered into under the authority of the same,

24——129

shall exonerate the said company or the stockholders thereof from any duties or liabilities imposed upon them by the charter of said company, or by the general laws of the State."

In *Railroad v. Dunbar*, 20 Ill., 623, the Court says the question before them was a new one. The lease was made *without* any authority in its charter and without any legislative consent; and the Court says, on page 627: "But we do not undertake to determine whether a railroad may make such a lease as would authorize the lessees to run and use such road or not, as the question is not presented by the record in the case." A careful review of the case, and of the facts upon which the decision is based, shows clearly that the question therein decided is not involved in this case.

In *Singleton v. Railroad*, 70 Ga., 464, 48 Am. St. Rep., 574, the lessor company had no *grant* of power conferred upon it by its charter to lease; the lease was made only with legislative *consent*. And it will clearly appear that the decision of the Court rests upon the *text* and head-notes of the authorities relied on, and they are not sustained by a close scrutiny of the body of the decision relied upon.

In *Railway Co. v. Mayes*, 49 Ga., 355, there was no lease, only a permit for another company to run its trains over the road, as was the case of *Aycock v. Railroad, supra.*

In *Railway Co. v. Campbell*, 86 Ill., 443, it was the *lessee* of a railway company which *permitted,* by contract, another company to use its road, and was held liable for its negligent conduct.

In *Balsley v. Railway Co.,* 119 Ill., 68, the lessor was held liable for damages resulting from fire. The lessor permitted dry grass and weeds to accumulate upon its right-of-way, which took fire from a passing engine of lessee, and was communicated therefrom to plaintiff's property, which was burned. The same as Aycock's case, and not applicable.

In *Quested v. Railway Co.,* 127 Mass., 204, the charter of

the lessor company *expressly* provided that the corporation *should* be liable for any injury inflicted by the carelessness or misconduct of its agents or servants; held, that a lessee is likewise liable, notwithstanding the lease was made under authority of a statute; said statute expressly provided: "But such lease or contract shall not release or exempt said company from any duties, liabilities or restrictions to which it would otherwise be subject." The Court said: "The effect of this provision is that the defendant has the same liability to compensate persons injured in the operation or management of the road, while the lease is in force, which it would have had if the injury had been sustained while the corporation was managing its own road."

*Braslin v. Railway Co.,* 145 Mass., 64, is a *similar* case.

In *Brown v. Railway,* 27 Mo. App., 394, the statute under which the lease was made provided "that the lessor shall be and remain liable for the acts of the lessee" (page 400).

In *Charlotte v. Railway Co.,* 26 Neb., on page 166, the Court says: "We are unable to find any proof in the record as to the capacity in which the Union Pacific Railway Company had possession of defendant's road—if it had such possession—whether of lessee, owner, or by a traffic arrangement."

In *Abbott v. Railway Co.,* 80 N. Y., 27, 36 Am. Rep., 572, the lease was made without authority of charter or legislative special authority. Therefore the lessee was held to be the agent of the corporation.

In *Cogswell v. Railway Co.,* 5 Wash., 46, the appellant was the owner of the railroad bed, track, cars, etc., and had contracted with a construction company, in consideration of equipping, etc., the road, that it should operate the road satisfactorily for at least ten days before it could require payment for its equipments; and the cause of action accrued during that time, and the corporation held liable.

In *Lakin v. Railway Co.,* 13 Oregon, 436, 57 Am. Rep., 25, the Court says: "It will be observed by the answer of defendant that the Oregon Pacific Railroad Company had not leased the defendant's road, but was engaged under a contract in building and constructing it, and at the time the alleged accident occurred was running and operating said road for the purpose of traffic in the carriage of passengers."

In *Railway Co. v. Underwood,* 67 Texas, on page 593, the Court says: "The proposition that the owner is absolved from liability when the lease is duly authorized by law is not to be disputed, but that without a statute conferring that power, a railroad company can not lawfully lease and transfer the control of its road, is settled by the cases we have previously cited. We have been referred to no general law of our Legislature authorizing such a lease. If any private act existed, the defendant should have pleaded it, so as to show that the lease was lawfully made. This not having been done, we conclude that the leases were not warranted by law."

*Railway Co. v. Morris,* 68 Texas, 49, is to the same effect.

In *Miller v. Railway Co.,* 3 N. Y., Supp., 245: By the *terms* of the *lease,* it was provided that the lessor would, from time to time, upon request of the lessee, pay for locomotives, etc., and for construction of extensions, etc., and for all other things, work or works, which the lessee may desire to have done; and the lessee erected an embankment causing the injury complained of—damage to adjoining land—for which the lessor paid, thereby ratifying the act, and received the benefits of; held, lessor to be liable.

In *Naglee v. Railway Co.,* 83 Va., 707, the liability occurred while the road was being run by trustees *selected* by the *corporation* to do so. To the same effect is *Acker v. Railway Co.,* 84 Va., 648.

In *Stella v. Railway Co.,* 49 Wis., 609, the relationship of

lessor and lessee was not involved. The action grew out of defendant's running its train on a private spur-track.

In *Nelson v. Railway Co.,* 26 Vt., 717, page 721, the Court holds the lessor responsible for the acts and torts of the lessee solely upon the principle that the lessee was the *general agent* of the lessor. The lease seems to have been executed without legislative authority, and the decision is based upon the principle of pricipal and agent.

In *Railroad v. Peyton,* 106 Ill., 534, the Chicago and Western Indiana Railroad Company permitted the W. St. L. and P. Railway Co., by a lease or agreement, to run its trains over a part of the former's track, and by this agreement the C. and W. I. R. Co. *retained the control* of the passenger trains of the W. St. L. and P. Ry. Co. over that portion of its track. By it, the servants of the *lessor directed and controlled* the servants and trains of the lessee in coming and going over the track. When the lessee "was permitted to perform that service, it was under the direction of lessor's yardmaster—this being the legal relation of the two companies by the terms of the lease or agreement entered into by them." The train which did the injury complained of was under the direction of the yardmaster (page 588). So the case is not an authority in our case.

It is contended that the contract of indemnity provided in the lease was a recognition of Logan's case, and doubtless was to some extent, but it does not estop defendant company from contesting the principle again in the Courts.

It is urged by counsel that Logan's case has been repeatedly quoted as an authority by this Court, and should therefore stand. If wrong, why? No interest or vested right will be disturbed by overruling it. If it be inconsistent with the chartered rights of the defendant company, it is better to return to a sound principle than to continue in error.

While I shall have to yield to the decision of the Court, yet I deem it my privilege to state my views upon the sub-

SMITH *v.* RAILROAD.

ject, now that the question is again presented and the Court is called upon to review and reaffirm or overrule the principle decided in Logan's case. In that case the Court spoke of a conflict between the decisions of different jurisdictions, and quoted the *text* of authors compiling the many decisions; but I have chosen rather to refer to the decisions themselves, and, in doing so, I am led to the conclusion that their conflict with the principles in the case at bar is less *real* than apparent.

I deem it unnecessary to further encumber the record by a discussion of the merits involved.