Pearson, J.
 

 This question is presented: upon an issue
 
 devisavit vel non,
 
 there is evidence tending to show that the propounder had procured the execution of the script, by threats of violence ; ought he to be allowed to prove that “he was a man of easy, quiet temper, and facile disposition, and therefore, not likely to exercise, or attempt the exercise of, the influence charged ?” And taking the question broadly, ought
 
 *155
 
 the caveator to be allowed to prove that the propounder is a man of violent temper, and therefore, likely to make threats ?
 

 In an action for seduction, the defendant offered to prove that “ he was a modest, retiring man.” This evidence is held inadmissible, and the general rule is announced, “ evidence of the character of a party is not admissible, unless it be put directly in issue by the nature of .the proceeding.”
 
 McRea
 
 v. Lilly, 1 Ire. Rep. 118.
 

 On an indictment for murder, evidence of the temper and deportment of the deceased is inadmissible.
 
 State
 
 v.
 
 Tilly,
 
 3 Ire. Rep. 424.
 

 In an action for a malicious prosecution, evidence of the character of the defendant in respect to sobriety, is inadmissible ; and
 
 McRea
 
 v.
 
 Lilly,
 
 is treated as settling the rule.
 
 Beal
 
 v.
 
 Robeson,
 
 8 Ire. Rep. 216.
 

 Again; it is decided that evidence of the general character of the deceased, as to temper and violence, is inadmissible.
 
 State
 
 v.
 
 Barfield,
 
 8 Ire. Rep. 344.
 

 The only opposing case is,
 
 State
 
 v.
 
 Tackett,
 
 1 Hawk’s Rep. 210. It is overruled by Tilly’s case, or so emasculated as not to be able to generate a principle, and is expressly confined to its peculiar circumstances. SSe note of Cowen and Hill Phil, on Evidence, 461; note 345, and the remarks of Rukkin, C. J., in
 
 Ba/rfield's case.
 
 Indeed,
 
 Tacleettfs
 
 case is not supported by any authority, either in the English reports or our own, and the Judges yielded to the seeming hardship, in the application of the general rule. Had the case been reversed, so as to present the question, was it admissible for tire State to prove the deceased was mild and submissive in his temper, we presume an exception would not have been made to the general rule.
 

 Our question, therefore, is settled, unless there be some ground for a distinction in regard to the probate of wills. If evidence of the temper and disposition of the deceased, in a trial for murder, or of the defendant in a civil action, is inadmissible, it would seem to follow, it is alike inadmissible in a
 
 *156
 
 trial
 
 before a jury,
 
 touching the execution of a will.
 
 Goodright
 
 v.
 
 Hicks,
 
 Bull. N. P. 294, is an authority to that effect. In ej ectment by an heir-at-law, to set aside a will, because obtained by fraud, evidence of the 'good character of the devisor is inadmissible, see 2 Starlde on Ev. 215 ; 1 Phil, on Ev. 174, although, if of good character, it -would
 
 be less lileely
 
 that ho had practiced the fraud imputed.
 

 Mr. Moore
 
 attempts to get rid of these authorities on two grounds: 1st. The offer in this case was to prove the temper and disposition of the propounder
 
 as facts,
 
 not as character, or general character and reputation. 2nd. There is a distinction in regard to the probate of wills. He relies on
 
 Davis
 
 v.
 
 Calvert,
 
 5 Gill and John. 271, and a passage from Swinburne, 452, 453.
 

 This makes it necessary to examine the grounds upon which such evidence is held inadmissible, upon the trial of indictments and civil actions, so as to determine whether the principle is general, or restricted in its application.
 

 This examination leads us to the conclusion, that the rule is based on two general grounds: 1st. It is too remote. 2nd. The obj ections to the mode of proof. Consequently, the principle is general, and the rule is applicable to
 
 slljury trials.
 

 As to thejwv-i: it is a rule of evidence that no testimony is admissible, linless it be relevant and connected with the fact in issue, so as to have a tendency to aid the j ury in finding with certainty, and not mere probability. This rule is based, among other considerations, upon the ground, that the admission of such testimony would render jury trials complicated, and tend to confuse and mislead, and induce juries to give their verdict upon conjecture, and not upon a conviction of the truth of the matter alleged, and would, in many instances, work further injustice, and take the opposite party by-surprise, as he is presumed only to come prepared to disprove or explain matters relevant and connected with the issiie joined, and not to go into collateral acts.
 

 Eor the sake of illustration: upon a plea of usury, the defendant offers to prove that, shortly before the debt sued for was
 
 *157
 
 contracted, tlie plaintiff had taken usurious interest from a third person, or from himself, or to prove that he was in the habit of lending upon usurious interest. This evidence is inadmissible. The fact, that the plaintiff exacted usury on yesterday, has no tendency to aid the jury in finding, with certainty, that he exacted it to-d¿y, although it makes it more probable, and the jury would be more likely to find the issue ' in fav&r of the defendant, which is the very thing a plaintiff would have a right to complain of; because he is not presumed to come prepared to go into every transaction of his life. So, on a question as to the precise terms of an agreement to let premises, although it might assist the j ury to make a guess, if evidence was admitted as to the terms on which the landlord had rented to his other tenants, the evidence is inadmissible as too remote.
 
 Carter v. Pryke,
 
 Peake’s Rep. 95 ;
 
 Spcnceley
 
 v.
 
 De
 
 Willott, 7 East, 108. So in Oapt. Yaughan’s case, who was indicted for adhering to the Kang’s enemies by cruising on the King’s subjects, in a vessel called the “ Loyal Glenearty,” the counsel for the crown offered to prove, that he had, some time before, cut away the custom-house barge, and had gone a-cruising in her ; this evidence was rejected, for were it true, it was no sort of proof that the prisoner had cruised in the Loyal Glenearty. This case is cited, Foster’s Grown Law, 246; and that very eminent Judge adds, “the rule of rejecting all manner of evidence in criminal prosecutions, that is foreign to the point in issue, is founded on good sense and common justice; for no man is bound at the peril of life or liberty, fortune or reputation, to answer at once, and unprepared, for every action of his life. Few, even of the best men, would choose to be put to it.” “ The common law, grounded on the principles of natural justice, hath made the like provision in every case.”
 

 I am here reminded of a case which occurred a few years ago in Paris. A woman was tried for the murder of her husband by poisoning. The evidence was circumstantial. The officer for the prosecution offered to prove, that ten years.before, while a single woman, she
 
 had stolen
 
 some jewelry. The
 
 *158
 
 evidence was admitted, on tlie ground, that it tended to show she was a person likely to commit murder, and thereupon she was convicted and executed for murder.
 

 What a striking contrast this case presents in favor of the rule of the common law, by which a prisoner cannot be prejudiced. by proof of his general character, much less by proof of particular acts!
 

 The prisoner is permitted to rely on liis good general character, and this, of course, lets in similar proof on the part of the prosecution, as the prisoner has made his character a part of the issue. But this is an exception to the general rule
 
 in fmorem vitos.
 

 Best, on his
 
 “
 
 Principles of Evidence,” makes these remarks : “ The rule, that evidence which is too remote is inadmissible, may be stated thus: that as a condition precedent to the admissibility of evidence, either direct or circumstantial, the law requires
 
 an open
 
 and
 
 visible
 
 connection between the principles and the evidentiary facts, whether ultimate or subordinate. This does not mean a
 
 necessary
 
 connection, that would exclude all presumptive evidence; but such as is reasonable, and not latent or conjectural.” Sec. 85. It may perhaps be objected, and indeed, Bentham’s Treatise on Judicial Evidence is founded on the notion, that by “ exclusionary rules” like the above, much valuable evidence is wholly sacrificed. Were such even the fact, the evil would be amply outweighed by reasons already assigned for imposing- a limit to the
 
 discretion
 
 of the tribunals.
 

 According to the rule that testimony is not admissible if too remote, evidence of character is never received, unless, from the nature of the proceeding, it is involved in the issue ; but when the very nature of the proceeding is to put in issue the character of any of the parties, it is not only competent to give general evidence of character, but to enquire into particular facts tending- to establish it. Bull. N. P. 295. Thus, on an indictment for keeping a common gaming, or bawdy house, the prosecution may give in evidence any acts of the defendant, which support the general charge. In actions
 
 *159
 
 for seduction or
 
 crim
 
 con, the character of the woman for chastity, being directly in issue, may be attacked, either by general evidence of her character in that respect, or by proof of particular acts of it. In indictments for rape, the prisoner may show the general character of the woman in respect to chastity, or show particular acts of criminal connection with himself. In
 
 Clark
 
 v.
 
 Periam,
 
 2 Atk. 337, the Yice Chancellor says, “ This is the practice in all eases where the general behavior, or quality, or circumstance of the mind, is the thing in issue ; as for instance in
 
 non compos
 
 mentis, it is the experience of every day that you give particular acts of madness in evidence, and not general only, that he is insane. So, when you charge that a man is addicted to drinking, and liable to be imposed upon, you are not confined, in general, to his being a drunkard, but particular instances are allowed to be given.” "With respect to witnesses; the credibility of a witness is always involved, and his character or general reputation as a man of truth or of honesty, is admissible ; but the individual opinions of witnesses, and particular facts, are excluded, on the ground, that the character of the witness is only involved incidentally; and although a man is presumed to be at all times prepared to prove his general reputation, yet he is not presumed to be prepared to go into a history of his life, unless the party chooses to take it from the witness himself; then his answer is conclusive.
 

 There are but few instances in which the trait of character in regard to being of an easy or quiet temper and facile disposition, can be involved in the issue, because such matters do not often affect legal rights. Indeed, the instances seem confined to cases where a testator, or donor, is alleged to have been imposed on, and the instrument obtained by fraud and undue influence; there, the trait of character of the testator or donor, as being of a facile disposition, or otherwise easy to be imposed on, being involved in the issue, evidence in regard to it may be given; but no case is found where, on a
 
 jury
 
 trial, evidence has been admitted, in regard to these traits of
 
 *160
 
 character of any one, other than the person alleged to have been imposed on.
 

 2nd. As to the mode of proving character. The word has two meanings; to this may be ascribed the confusion of ideas met with in some of the cases. “ Character : The peculiar qualities impressed by nature or by habit on the person, which distinguish him from others; these constitute
 
 real
 
 character. The qualities wdiich he is supposed to possess, constitute his estimated character or reputation.” Webster’s Hie.
 

 Is a man. honest; is he good matured; is he of a violent temper ; is he modest and retiring, or impudent and forward; these all constitute traits of character, and
 
 are facts ;
 
 but there is an essential difference between facts of this kind, and facts of the kind ordinarily dealt with cn jury trials. The latter are known directly by 'the senses, as by seeing or hearing a thing. The former can only be known indirectly, and bj* inference from acts. A witness called to prove them, can only give-the opinion which he has formed by his observations of the conduct of the person under particular circumstances; for instance, the witness will say, “ the person is good-natured, or, has a violent temper,.because I have seen him act with forbearance, or violence, under certain circumstances.” Such traits of character being only susceptible of proof by the individual opinion of witnesses, formed from an observation of particular acts, which necessarily lets in the history of a person’s whole life-time, evidence in regard to them is inadmissible on jury trials, except in a very few instances, and only where they are involved.in, and form a part of, the issue, but never when they arise incidentally.
 

 lias a man the estimated character or reputation of being honest, or of being good-natured, or passionate, or humane, or cruel; this general character, as it is called, is also a fact; it is the opinion which those who are acquainted with him have formed in respect to his several traits of character. There is also a mode of proving real character, which is the object in view; but it is objectionable, because it is a mere approximation, and does not arrive at the fact itself. The opinion of a
 
 *161
 
 man’s acquaintances, that he is honest, or good-natured, &c., does not prove that he is so ; still, this mode of proof is less objectionable than that which depends on the individual opinion of witnesses, and leads to the history of a person’s whole life ; therefore it is admissible in more instances than the other, and is sometimes allowed when a trait of character becomes material, incidentally, and the inquiry is collateral to the issue. Eor instance, the estimated character, or the opinion which his acquaintances have formed of him in respect of his honesty, is admissible in regard to witnesses; and the least objectionable mode of proof as to their real character, is to show their general character or reputation.
 

 Thus it is seen, from the authorities and the reason of the thing, that this exclusionary rule, as Mi. Best terms it, is based on general principles applicable to all jury trials; and evidence of character, whether in respect to honesty, or temper, or disposition, is inadmissible by either mode of proof, unless that fact constitutes a part of the issue, or unless it arises in-, cidentally ; in which latter case, the evidence is confined to proof of general character or reputation, in regard
 
 to the
 
 particular trait of character material to the investigation.
 

 The remarks made above, anticipate, in a great measure, the answer to the position taken by
 
 Mr.
 
 Moore, based upon the supposed distinction between character in respect to honesty, and character in respect to being good-natured, or passionate, and so on. lie admits that when evidence of the former is admissible, it must be by proof of general character, but contends that evidence of the latter traits of character, may be proved, as facts, by witnesses who know them. According to the conclusion drawn above, such evidence is not admissible at all. Of course the mode of proof cannot make it admissible; and from what is said above, it is seen, that the mode of proof he suggests, is more objectionable and more restricted in its application, than the mode which he admits cannot be resorted to. His only authority for the position is a remark of Rujotin, O. J., in
 
 Tilly’s case.
 
 After holding that evidence of the temper and deportment of the deceased
 
 *162
 
 towards his overseers and tenants was inadmissible, because irrelevant, he adds,
 
 “
 
 besides, this is not one of those points of which character is evidence. Temper and deportment are not matters to be proved by reputation; but if they are evidence at all, they can be established as facts, only by those who know them.” The evidence being inadmissible, that remark as to the mode of proof was uncalled for. How can a witness know a man’s temper, except by inference from particular facts ? No authority is cited, and the remark seems not to have been weighed by the learned Judge with his usual degree of consideration; because the Court, of which he was a member, in
 
 McRea
 
 v. Lilly, makes no objection to the mode by which the defendant proposed to establish the fact of his being a modest, retiring man, to wit, by proof of his general character in that respect. In
 
 Beal
 
 v.
 
 Robinson,
 
 the same mode of proof was offered, and in Barfield’s case, he puts the objection to the evidence of the character of the deceased, as to temper and violence, on the ground of its irrelevancy, and does not allude to the fact, that the mode of proof was by general character or reputation, although he quotes the remark made in Tilly’s case, for the purpose of showing that Tackett’s case was doubtful. This objection to the mode of proof would have been decisive of Barfield’s case, and presented a ground upon which there might have been a concurrence of opinion, provided he still thought it well founded. This silence in regard to it, although the reference to Tilly’s case must have suggested it, shows that the Judges agreed, if the evidence was admissible at all, proof by general reputation was the proper and least objectionable mode.
 

 As to
 
 Davis
 
 v. Calvert, 5 Gill and John. 271, it is there decided, upon a contest as to a will which the caveators alleged was obtained by falsehood and fraud, admissible, for the caveators to give in evidence that the testator, a man upwards of 86 years old, had been imposed on by a free negro woman, who lived with him as his mistress, and who made him believe that he was the father of her child, and to offer in evidence, facts and circumstances tending to show that the old
 
 *163
 
 man was not its father. The decision rests upon the peculiar circumstances of the case, and has no bearing on the question before us. The general remarks are all referable to the passage cited from Swinburne.
 

 “ That testament is to be repelled, which is made upon a just fear; which conclusion is both diversely extended and limited. The limitations are : 1st. The testament made by fear is not void
 
 ijpsojwre,
 
 but voidable by the help of exception, &c. 2nd. When the fear is but a vain fear, (for a just fear only, that is, such a fear as may move a constant man or woman, maketh void the testament, as the fear of death, or of hodily hurt, or of the loss of all, or most part of one’s goods, and such like fear,) whereof no certain rule can be delivered, but it is left to the discretion of the Judge, who ought not only to consider the quality of the threatenings, but also the persons, -as well threatened as threatening; and in the threatened, the sex, age, courage or pusilanimity; and in the person threatening, the power, the disposition, and whether he he a mere boaster, or a performer of his threats.” Swinb. 475, 476.
 

 It has been' often held in our Courts, that, upon the trial of an issue
 
 cleviscwit ml non,
 
 evidence of the age and temper of the alleged testator, that he was of a facile disposition, and easily influenced, or firm of purpose, is admissible. Indeed, such evidence was received upon the trial of the case now before us; but it has never been held admissible to prove the disposition of the “ person threatening,” or that he was
 
 “
 
 a mere boaster, or a performer of his threats.” So, the latter part of the passage from Swinburne has never been approved or acted upon. It is true that Williams and Roper bring forward the whole of it; but neither Phillips, Starkie, nor Green-leaf, cite any such rule of evidence as obtaining in the common law courts ; On the contrary, they all adopt the general conclusion to which we have arrived.
 

 It may be further remarked, in reference to the latter part of the passage, evidence that the person threatening was a mere boaster, or a performer of his threats, can have no tendency to show the effects of the threats, unless there be proof
 
 *164
 
 that the person threatened
 
 lenew
 
 his character in this respect. So this qualification must at all events be added.
 

 If, however, it be assumed, that such evidence is admissible in the ecclesiastical courts, it is very certain it is not admissible in the common law courts ; and we have a question as to the effect of the Statute, which provides that all issues of
 
 devismit vel non
 
 shall be tried by
 
 a jiwy i/n the common law courts.
 
 Are the latter to proceed according to their own rules of evidence, dr are they to import the rules of the former ? The difference between trials before a fixed tribunal, which decides the facts as well as the law, and jury trials, is pointed out in
 
 Downey
 
 v. Murphey, 1 Dev. and Bat. Rep. 83, and
 
 State
 
 v. Williams, 2 Jones’ Rep. 257 ; and it.follows, of course, if there be a difference in the rules, where the statute requires the issue to be tried before a jury in the common law courts, it was intended they should proceed in the trial as in other cases. Trials as to wills of personalty and devises are put on the same footing. The ecclesiastical courts never had jurisdiction in respect to the latter; which proves beyond question, that the common law courts are to proceed according to their own rules in regard to both.
 
 Mr. Moore
 
 says, the idea of having a different rule of evidence in regard to the same question, because the trial is transferred from one Court to another, is monstrous. The reply is, the idea of the same Court acting upon different rules of evidence, when the principle is the same, is still more monstrous!
 

 But we apprehend this question does not arise. Swinburne is not laying down a rule of evidence, but is attempting to point out the distinction between a
 
 fist fear
 
 and a
 
 vain
 
 fear,
 
 “
 
 whereof” he says, “ no certain rule can be delivered.” He assumes that a threat is established, and confines himself to the enquiry as to the effect it is calculated to have on the person threatened ; so the passage does not support the position for which it was cited. Swinburne says, if a threat be made, the character of the person threatening has a tendency to show its effect; the object of
 
 Mr. Moore
 
 is entirely different; he wishes to prove the character of the propounder as tending to
 
 *165
 
 show that
 
 no threat was ever in faet made.
 
 Suppose, with Swinburne, a threat has been made; how can the fact, that the propounder is a man of easy, facile disposition, answer the purpose for which, as the case states, the evidence was offered ?
 

 Whether, if a threat be proved, evidence that the propounder is
 
 “
 
 a mere boaster, or a performer of his threats,” would be admissible, to show the nature and effect of tlio threat; and whether, supposing it to be admissible, the fact must be established by general proof of reputation in that respect, or by proof of particular acts, are questions not now presented. It is sufficient to say, the passage from Swinburne does not support the position, that such evidence is admissible in either mode, to prove that the propounder did not make the threat, or was more or less likely to do so, which is the question before us; and does not conflict with the conclusion to which we have arrived.
 

 Per Curiam.
 

 There is no error. Judgment affirmed.