CHEEK v. LUMBER CO.

(Filed February 16, 1904).

1. EVIDENCE—*Pleadings—Waiver.*

A party, by introducing in evidence the whole of a paragraph of the answer, waives his exception to the refusal to allow him to introduce part only of it.

2. EVIDENCE—*Fires—Railroads.*

In an action for the burning of plaintiff's timber by sparks from defendant's engine, evidence that a year later, at another place, it set fire to timber, is not competent.

3. EVIDENCE—*Harmless Error—Fires—Railroads.*

The admission of evidence, in an action for damages caused by fire, of the condition of the engine is harmless, the court having instructed that the defendant was liable if the engine set the fire.

4. EVIDENCE—*Estoppel—Admissions—Railroads.*

Though prior to the action for the burning of timber by sparks from an engine defendant's president and general manager, who did not see the fire set, stated that the engine set it, defendant is not estopped to show he was mistaken.

134——15

5. NEGLIGENCE—*Burden of Proof—Proximate Cause—Railroads.*

> The fact that the defendant's engine was not equipped with a spark-arrester, though negligence, does not make it liable for a fire without proof that it set it.

Discussion of spark-arresters by CLARK, C. J.

ACTION by Agnes R. Cheek against the Oak Grove Lumber Company, heard by *Judge Fred. Moore* and a jury at June Term, 1903, of the Superior Court of HALIFAX County. From a judgment for the defendant the plaintiff appealed.

*Day & Bell* and *T. C. Harrison,* for the plaintiff.
*W. E. Daniel, E. L. Travis* and *Claude Kitchin,* for the defendant.

CONNOR, J. This action is prosecuted by the plaintiff to recover damages alleged to have been sustained by the negligence of the defendant, in that it negligently and carelessly failed and neglected to equip its engine with spark-arresters and other appliances to prevent the escape of fire and sparks when passing over the lands of the plaintiff, whereby much valuable timber standing on her land was destroyed, etc. The defendant denied the material allegations in the complaint, and thereupon the following issue was submitted to the jury: "Did the defendant negligently and wrongfully burn the plaintiff's timber as alleged in the complaint?"

After the introduction of other testimony the plaintiff offered to read in evidence a portion of the fourth paragraph of defendant's answer, to-wit, "That it admits the engine used by it for hauling logs was not equipped with a spark-arrester."

The defendant objected, and to the Court's ruling sustaining the objection the plaintiff excepted. The plaintiff thereupon introduced the whole of said paragraph, to-wit, "That

the fourth section thereof is untrue, save and except that it admits that the engine used by it in hauling logs was not equipped with a spark-arrester; but it avers there was no necessity therefor, and the failure to so equip it was not negligence."

Without passing upon his Honor's ruling, we have no hesitation in coming to the conclusion that the exception was waived by the action of the plaintiff in reading to the jury the entire paragraph of the answer. If the plaintiff had relied upon the exception, and thereby lost the benefit of the admission in the answer, she would be in a position to have this Court decide whether there was reversible error in the ruling of his Honor. She abandoned the exception, and by reading the entire paragraph got the benefit of the admission. The learned counsel in their brief complain that the portion of the paragraph which they desired to exclude "was a statement of bad law which could not explain or modify the admission." His Honor so instructed the jury. We cannot perceive how the plaintiff has any cause to complain in this respect.

The plaintiff proposed to show by the president and general manager of the defendant corporation that the same engine, one year after the fire in question, at another place some miles distant from the defendant's farm, set fire to timber. The exclusion of this evidence forms the basis of the plaintiff's second exception. We concur in his Honor's ruling. The proposed evidence involved too many collateral inquiries—was calculated to mislead and confuse the jury in respect to the fact in issue. It is often difficult to accurately trace the line which separates evidence which is relevant, that is, has a visible, reasonable connection with the fact in issue, from that which is too remote and constitutes no evidence. The fact that the engine which was charged with the injury to the plaintiff's timber twelve months after and

at another place fired timber gave no aid to the jury in answering the issue, unless it was followed by a mass of other testimony showing similarity of conditions, etc.

*Pearson, C. J.,* in *Bottoms v. Kent,* 48 N. C., 154, thus states the rule: "As a condition precedent to the admissibility of evidence, the law requires an open and *visible* connection between the principal and the evidentiary facts. This does not mean a necessary connection which would exclude all presumptive evidence, but such as is *reasonable* and not latent or conjectural." In *State v. Vinson,* 63 N. C., 335, *Rodman, J.,* says: "If the fact offered to be proved be equally consistent with the existence or non-existence of the fact sought to be inferred from it, the evidence can furnish no presumption either way and should not be admitted." *State v. Brantley,* 84 N. C., 766; *Grant v. Railroad,* 108 N. C., 462; *Ice Co. v. Railroad Co.,* 126 N. C., 797.

The president and general manager of the defendant was permitted to testify, after objection, that his engine had no spark-arrester; "it was a cog-gear locomotive engine, kind usually used on such roads; that it at one time had a spark-arrester; did not steam well and it was taken off. The results were poor, could not get any steam, took it off; got good results, steamed all right." Plaintiff's counsel insist that this testimony was incompetent and excepted to its admission. We can perceive no valid objection to it, and in the light of his Honor's charge it was entirely harmless. The defendant was certainly entitled to describe to the jury the construction, equipment and operation of its engine. The value of the testimony, as relieving the defendant of liability, was for the jury under proper instructions from the Court. The exception cannot be sustained.

Plaintiff introduced a witness who testified that the president and general manager of defendant said to him in response to the question, "Did your engine set it afire?" "Yes,

my engine set it afire, but fire had been there before." There
was other testimony tending to show that defendant's engine
set fire to the timber. No eye-witness testified to the fact.
The defendant introduced testimony tending to show·that the
timber was set on fire from other causes. His Honor in-
structed the jury that although they should find that the
engineer of the defendant told the plaintiff's witnesses that
the defendant's engine set fire to the plaintiff's timber, that
did not necessarily render the defendant liable unless the
jury find that the defendant's engine did actually set fire
to the timber, but that the jury were at liberty to consider all
the evidence, the facts and circumstances testified to by the
witnesses, and find whether defendant's engine did actually
set fire to plaintiff's land or woods or not. Plaintiff ex··
cepted. It was not claimed that the defendant's general man-
ager saw the·engine set fire to the timber. The plaintiff in-
sists that if the jury believe that the president made the ad-
mission the burden was shifted, and put upon the defendant
the labor of showing that the fire was not the result of negli-
gence. We cannot concur in this view. The testimony, if
believed, did not estop the defendant from showing that its
general manager was mistaken in saying that the engine set
fire to the timber. The admission does not come within the
rule which binds a party to a "solemn admission" made in
the pleading. It may well be that the general manager, from
the facts and circumstances known to him, honestly believed
that the engine set fire to the timber. This was competent
testimony, but did not work an estoppel upon the defendant
to show the fact to be otherwise. In the light of his Honor's
charge, it is evident that the jury found that the defendant's
engine did not set fire to the timber. His Honor told the
jury that if they found the defendant's engine was not
equipped with a spark-arrester, and that the fire was caused
by the failure of the defendant to equip his engine with a

spark-arrester, that they should answer the first issue "Yes." This was equivalent to telling the jury that the failure to have a spark-arrester was negligence, and that if by reason thereof the plaintiff sustained the injury complained of the defendant was liable. This instruction was strictly in accordance with the rulings of this Court. It being conceded that the engine had no spark-arrester, the only question under his Honor's instructions for the jury to answer was whether the engine set fire to the timber and the failure to have the spark-arrester was the proximate cause thereof. These questions were peculiarly within the province of the jury. We concur in the plaintiff's contention that the failure to furnish the engine with a spark-arrester was negligence and his Honor so instruced the jury, leaving to them the question whether the engine set fire to the timber and whether the failure to have a spark-arrester was the cause thereof. The proposition maintained by the plaintiff is that the defendant's engine set fire to her timber; that it had no spark-arrester; that the failure to have a spark-arrester was negligence *per se*. If we concede this proposition the plaintiff must, before she can maintain her action, show that the failure to have a spark-arrester was the proximate cause of the fire. "Negligence, no matter in what it may consist, cannot result in a right of action unless it is the proximate cause of the injury complained of by the plaintiff." Elliott on Railroads, sec. 711; *Henderson v. Traction Co.*, 132 N. C., 779; *Butts v. Railroad Co.*, 133 N. C., 82; *Edwards v. Railroad Co.*, 129 N. C., 78.

We think that his Honor's instructions fully cover every phase of the controversy and that plaintiff's exceptions cannot be sustained. Upon a careful examination of the entire record we find no reversible error and the judgment must be affirmed.

CLARK, C. J., concurring.   Fires set by locomotives are so
disastrous that all reasonable means should be used to prevent
them.   The cut of a locomotive used in *Williams v. Railroad,*
130 N. C., at page 125, has been very useful to the profession
and the Court in the trial of actions for damages for fires
alleged to have been caused by sparks thrown out by locomo-
tive engines.   It may be useful and therefore not inappro-
priate in a concurring opinion in this case (in which the
spark-arrester was taken off because with it the engine did
not steam well), to add to the cut used in 130 N. C., *ut
supra,* the following description and cut of a successful de-
vice used on several European railroads to prevent fires being
caused from locomotive sparks, taken from an official govern-
ment publication.   U. S. Consular Reports, 1904, p. 702.

"The device consists of a series of three grates set one above
another in a square iron or steel frame of such size and form
as to fit into the smoke chamber of the locomotive.   The ar-
rangement of the three tiers of grate bars is shown by the
illustration below.   Each bar is about two inches wide by one-
tenth of an inch thick, and is ingeniously set into the frame
so as to be held in place against any shock or pressure and at
the same time to be free to expand or contract with changing
temperatures.   As shown by the diagram the middle tier or
grate contains twice as many bars as the top and bottom
tiers, and the arrangement of bars and spaces is such that
while a free passage is secured for the gases of combustion
no spark or ember more than one-sixteenth of an inch in
thickness can escape, and these are so small that they are self-
extinguished within a few feet after escaping into the open

air and cause no danger. This ingenious arrangement of the bars, together with the readiness with which they expand and contract under varying temperatures, acts to dislodge the adhering particles and prevents the arrester from becoming clogged, at the same time permitting a draft so open and free that the steaming capacity of the engine is said to be visibly greater than with any other type of spark-catcher heretofore used."

It is there said that this design has solved the problem which "has been to devise a metallic network fine enough in mesh to effectively sift the glowing sparks from the blast of a locomotive without so obstructing the draft as to compromise its steaming capacity. Hitherto the bars or filaments of net-work spark-arresters have been mainly round and fixed in place—conditions which always entail more or less danger of choking and clogging whenever the space between bars or meshes is small enough to really prevent the escape of sparks and glowing embers of dangerous size."

This device occupies the space E E E in the cut in 130 N. C., at p. 125, but instead of being a flat mesh, as there used, it consists of three tiers or sets of bars, each two inches deep by one-tenth of an inch thick, making a total thickness of six inches through which the sparks must pass, with such distance between the bars as prevent, but without clogging, the passage of any cinders more than one-sixteenth of an inch in thickness.

MONTGOMERY, J., did not sit on the hearing of this case.