This action was brought to recover damages for burning plaintiffs' woods, which they contend was caused by the defendant's negligence. The court, in the charge, states concisely the principal facts upon which the plaintiffs claim the right to recover. It is alleged by plaintiffs "that about 1 May, 1914, while the defendant Roper Lumber Company was in possession of certain land, and cutting the timber, building tramroads for the purpose of getting the timber out, hauling logs to load, that they negligently and carelessly permitted fire to escape from their engines, and thereby destroy a large quantity of timber that was not covered by the deed made by them to the Blades Lumber Company; that there were two fires several days apart, and there was no one else in the woods at the time, except those who were employed by the Roper Lumber (222) Company, and that one of the fires originated from the right of way that they had weeded out for the purpose of putting down cross-ties and iron, and that no one else was there when the fire started; that the fire originated from or near that place, and that defendant's servants negligently and carelessly permitted the fire to get out, and that after the fire got out, that they, through their carelessness and negligence, did not stop it, and did not get a sufficient force for that purpose; that the fire was originated near *Page 239 
where they were at work, in a pile of logs that had been hauled there, and that some of the parties working for the Roper Lumber Company were at work near-by, and the fire spread out on the south side of the road and did great damage."
The principal exception of the defendant is that there was no evidence of negligence. We will, therefore, make such excerpts from the testimony as will show what the proof was upon which the plaintiffs relied, though will not state all of it consecutively, but only connectedly, as to that part of it which is material:
R. W. Craft testified: "Defendant's train ran on the only right of way he knows of in the woods in question."
A. D. Wood testified: "I know about the fire that started on and burned over that land . . . I passed there and saw the fire on one of the rights of way. I was 60 or 70 yards from the fire, I think. I had seen the right of way before I saw the fire on it. I think the hands had finished it. It came from the Pender line of the Roper Lumber Company. They had been making the right of way and it was just cleaned off. I saw that the logs and trees were cut and that it was weeded to secure the fire. The right of way was in condition to burn. I don't recollect how long it had been since it rained, but it was very dry; it was ordinary grass and straw on the ground. I heard some knocking going on around there. I went the next day where I had seen this and found fresh timber cut there. I know that afterwards the Roper Lumber Company hauled the logs. Some of the grass on the track was dead and some was alive. It had not burned much at that time. It was straw and wire-grass, pine straw; it was dry. The wind was blowing in a northerly direction that morning. I saw Mr. Hub Jones, and he was working for the Roper Lumber Company and was looking after the fire when I found him. I did not see any one else. The fire came from towards the train. It was burning in a few feet of the train. There was a train operating on the tram. I think the loader was on that line. I went near enough to see that they were trying to stop the fire. The loader was operated by a steam engine."
J. S. Raynor testified: "There was a lot of pine tops, which were dry and trashy. The ground where the fire spread was right smart trashy and dry bush. The best I can remember, the engine was not far from the fire at the time I first noticed the fire (223) break out."
There was a verdict for $600 in favor of the plaintiffs. Judgment was entered thereon, and defendant appealed, after reserving its exceptions. *Page 240 
after stating the case: The first question is, whether there was sufficient evidence, in law, to support the verdict, or, in other words, was there any evidence that the defendant, by its servants, negligently burned the timber on plaintiff's land?
After a most careful review of the testimony, we think that the case was properly submitted to the jury upon the question of negligence, and that the evidence was sufficient to support the verdict. It was said in Deppe v.R. R., Co., 152 N.C. 79, 81: "The defendant contends that no witness testified that he saw sparks emitted by the engine, or that he saw the sparks from the defendant's engine ignite the plaintiff's lumber kiln. In considering this contention, it must be remembered that this fire occurred in the daytime — in the brilliancy of a summer sun, rendering sparks emitted by an engine incapable of being seen by the human eye. That no one saw the sparks ignite the burned property was the fact in McMillan v. R.R., 126 N.C. 725, and Williams v. R. R., 140 N.C. 623, in which latter case this Court comments upon a similar contention: "No one testified that he saw the sparks fall from the engine upon the right of way. It is rarely that this can be shown by eye-witnesses, for it would be put out by the observer. But here the fire was seen on the right of way; it burned along the track between the ditch and the ends of the ties, and thence had gone into the woods. The wind was blowing from the northwest across the track, the fire being on the south side. Two witnesses testified that they first saw the smoke about thirty minutes after defendant's engine passed. How long before that the fire began no one knew, but there was no fire before the engine passed. The other witnesses first saw the fire after a longer interval, and there was evidence that the fire burned both ways. These were matters for the jury. . . . In considering the origin of the fire, it is immaterial whether the fire caught on or off the right of way."
If this is a correct statement of the law as applicable to the Deppe
case, it must be so in the present one, when we consider it with reference to the facts appearing in this record, which are much stronger, as tending to show negligence on the part of the defendant, than those in the other case.
It was said by Pearson, J., in Bottoms v. Kent, 48 N.C. (224) 154, quoted with approval in Cheek v. Lumber Co., 134 N.C. 225, 228: "As a condition precedent to the admissibility of evidence, the law requires an open and visible connection between the principal and the evidentiary facts. This does not mean a necessary *Page 241 
connection which would exclude all presumptive evidence, but such as isreasonable and not latent or conjectural."
It seems to us that the case of Ashford v. Pittman, 160 N.C. at p. 47, is on all-fours with this case, in all essential respects. Justice Brown there stated: "No evidence is offered which tends in the least to explain or throw any light upon the cause of the fire, unless it caught from the fire around the pot, built within 30 feet of the stables. It is true that the evidence does not prove conclusively that the stables caught from the fire, built so near them, but we think the evidence is of such circumstantial character that it should be submitted to the jury, to be determined whether the building the fire around the pot caused the burning of the stables. Circumstantial evidence has frequently been allowed to determine matters of much greater consequence, both criminal and civil. There are a number of cases in our reports where the evidence of circumstances has been allowed to go to the jury as bearing upon the origin of a fire," citing McMillan v. R. R., 126 N.C. 726; Aycock v. R. R.,89 N.C. 327; Simpson v. Lumber Co., 133 N.C. 101. In the McMillan
case, when the point was suggested that there was no eye-witness who testified to the origin of the fire, but the plaintiff relied only upon circumstances as to how the fire originated, the Court remarked that, while it was true the evidence was entirely circumstantial, it frequently happened in cases of gravity and of the greatest importance, both criminal and civil, that this kind of evidence is resorted to for proving or disproving the existence of an essential fact; and, it is added, that in the case then under consideration, the undisputed facts were that there was a railroad track and right of way where the defendant's engine was and had been, and immediately afterwards the fire was ignited, which spread to the plaintiff's lands and damaged them, the land contiguous to the track being covered with combustible material — that is, covered with dead broom-straw. The Court held the facts sufficient to go to the jury. The Simpson case is to the same effect. There the sparks were not actually seen by any one. It appeared in that case that the train had passed on the defendant's track, and shortly thereafter a fire was discovered not far from the plaintiff's house and near the track. That case is also very much like ours, the difference, if any, being that in this case there were fires on both sides of the track, while in the Simpson case the fire was confined only to one side. The mere fact that in the Simpson case the train was moving makes little or no difference, because an engine standing still can emit sparks as well as one that is moving. The Aycock case (225) is like the Simpson case in its material facts.
The cause of the fire is not required to be shown by direct and *Page 242 
positive proof, or by the testimony of an eye-witness. It may, as we have seen, be inferred from circumstances, and there are many facts like this one, which cannot be established in any other way. It is true that there must be a causal connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted or known facts, for otherwise presumptive evidence would be excluded. We have held, proof as to the emission of sparks from locomotives or stationary engines to be sufficient for the purpose of showing that a fire was started by them, where no one saw the sparks dropping on the place which was burned, and for the reason that the surrounding circumstances tended to prove that they were the cause of the fire, by reasonable presumption or inference. We have cited several such cases, and it would be useless to mention others. This is rather a typical case of that class, and the facts tend to show the true cause of the fire with more certainty than in many of them where the owner of the engine was held liable for a negligent burning. There were fires on both sides of the tramroad. One of the witnesses stated that "the fire came from towards the tram and was burning within a few feet of the train which was operating on the tram. The loader, I think, was on the line, which was operated by a steam engine. I was near enough to see that they were trying to stop the fire." He also testified that the right of way was covered, at places, with dry grass and pine straw, logs and other inflammable material, and that the first fire seen by him was "in the region near the southwest swamp and on the right of way." This evidence is not merely conjectural or speculative, but is such as warranted the jury in forming a reasonably safe conclusion that the fire was set out by the engines; there being, in addition to all this proof, the fact that there was nothing else there to cause the fire. McMillan v. R. R., 126 N.C. 725; Williams v. R. R., supra.
The next question is, Was there any negligence on the part of the defendant? "The decided weight of authority and of reason is in favor of holding that the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it used all reasonable precautions." Deppe's case, supra. An able writer on the law of negligence says: "The plain proposition applicable here, as in other cases, is that where an injury to `A.,' or the property of `A.,' proceeds from the premises of `B.,' under such circumstances that injuries do not ordinarily happen where care is used to prevent them, the mere fact of the injury so proceeding is prima facie evidence of negligence to charge `B.' in conformity with the rule that the
(226) thing itself speaks." Thompson on Negligence, Vol. 1, sec. *Page 243 
732, p. 671. This principle, as stated by Mr. Thompson, has frequently found its way into our decisions, and has been applied by us with exceptional uniformity. Aycock v. R. R., 89 N.C. 329; Williams v. R. R.,supra; Cox v. R. R., 149 N.C. 118; Knott v. R. R., 142 N.C. 238; Kornegayv. R. R., 154 N.C. 392; Currie v. R. R., 156 N.C. 419. In the Aycock
case, Chief Justice Smith said: "It is but just that the owner should be allowed to say, `You have burned my property, and if you were not in default, show it and escape liability," citing note to R. R. v. Schurtz, 2 Am. and Eng. R. R. Cases 271. And the same was thus substantially said by Justice Burwell, in Haynes v. Gas Co., 114 N.C. 203, 208, citing and quoting from Aycock's case, supra, and Moore v. Parker, 91 N.C. 275, to this effect: "A prima facie case of negligence being thus made out against the defendant, he must produce proof of care on his part, or of some extraordinary accident that rendered care useless, in order to rebut the presumption. Guided by the principle announced in these cases, we come to the conclusion that this plaintiff should have been allowed to say to this defendant, `The wire you put in the street killed my son while passing along the highway, as he had a right to do. If you are not in default, show it and escape responsibility.' Numerous authorities might be cited to sustain our conclusion upon this point, the cases being strictly analogous to this one. But we content ourselves with a reference to Ray on Negligence of Imposed Duties, p. 145; Wood's R. R. Law 1079; Whitaker's Smith Negligence 423. The last-mentioned author says (p. 422): `If the accident is connected with the defendant, the question whether the phrase, "res ipsa loquitur," applies or not becomes a simple question of common sense.' It seems to us that there is nothing in the relation of the deceased to the defendant or in any of the circumstances attending the incident of his death to prevent the rigid application here of the rule announced by Judge Gaston in Ellis v. R. R., 24 N.C. 138, and reaffirmed, as stated above, inAycock v. R. R., supra." And in Haynes' case, Justice Burwell gave the following reason for the rule, though, that Chief Justice Smith, from whose opinion he quoted, had personally preferred the one which placed the burden upon the plaintiff: "In Aycock v. R. R., 89 N.C. 321, where a plaintiff sought to recover damages for the burning of his property, fire having been communicated to it by sparks from an engine on the defendant's road, Chief Justice Smith, discussing `the question as to the party upon whom rests the burden of proof of the presence or absence of negligence where only the injury is shown, in case of fire from emitted sparks,' declares that this Court will `abide by the rule so long understood and acted on in this State, not alone because of its intrinsic merit, but because it *Page 244 
is so much easier for those who do the damage to show the (227) exculpating circumstances, if such exist, than it is for the plaintiff to produce proof of positive negligence,' and he adds that `the servants of the company must know and be able to explain the transaction, while the complaining party may not.'" Justice Allen states the rule concisely in Currie v. R. R., supra, as follows: "The first issue establishes the fact that the defendant destroyed the property of the plaintiff by fire, and from this fact alone the presumption arises that the defendant was negligent," citing several of our decisions. The jury, in response to the first issue in the Currie case, merely found that the property was burned by sparks from the defendant's engine, and the burden was then shifted to the defendant to disprove negligence, or to show that the engine was properly constructed and carefully operated, so as to prevent the emission of sparks. This renders useless further discussion of this matter.
The contention that Jones and Raynor were independent contractors, having charge and direction of defendant's operation at the place of the fire, the jury have settled against the defendant, upon sufficient evidence and a correct instruction from the court, which was that if the jury found from the evidence that Jones and Raynor were at the time under the control and management of the defendant in doing the work assigned to them, they were not independent contractors; but that if the defendant had no control over the manner in which they performed the work, but simply paid them for their services, being interested only in the result of their labor, they would be independent contractors. This was sufficient, especially in view of what was said by the witness J. S. Raynor, that "Mr. Whitehurst (defendant's vice-principal) told me what to do in the woods. . . . He would tell me what logs to haul and how to put them, and I had to put them where he said. I hauled them in any direction that I wanted to. . . . Mr. Whitehurst was over me. He was walking boss. He told me where to work, and how to work, and where to put the logs, and so forth. . . . There was no one else there, except those working for the defendant." This was evidence that Raynor was not an independent contractor. There was other evidence of the true relation between defendant and Jones and Raynor. Thomas v. R. R.,153 N.C. 351; Beal v. Fiber Co., 154 N.C. 147; Denny v. Burlington,155 N.C. 33; Embler v. Lumber Co., 167 N.C. 457; Dunlap v. R. R.,167 N.C. 669. But the doctrine does not apply at all if the work which the master directs to be done is inherently dangerous, as held in Davis v.Summerfield, 133 N.C. 325; Thomas v. R. R., supra; Watson v. R. R.,164 N.C. 176; Denny v. Burlington, supra, and Embler v. Lumber Co., supra, in which the Court said: "An independent contractor is said to be one who, exercising *Page 245 
an independent employment, contracts to do a piece of work according to his own judgment and methods, and without being subject to his employer, except as to the result of the work, and who has the right to employ and direct the action of the (228) workmen, independently of such employer and freed from any superior authority in him to say how the specified work shall be done or what the laborers shall do as it progresses. 1 Bouvier's Law Dict., p. 1011; Casement v. Brown, 148 U.S. 615
(37 L.Ed. 582). The rule, however, is subject to this qualification: `Where an obstruction or defect which occasions an injury results directly from the acts which an independent contractor agreed and was authorized to do, the person who employs the contractor and authorizes him to do these acts is liable to the injured party; but where the obstruction or defect caused or created is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable, and in such case the contractor will be liable for his own negligent acts.' . . . An employer, of course, cannot authorize a dangerous piece of work to be done, or work, the doing of which according to the contract of employment will necessarily or probably be dangerous and injurious to others, for this would be to participate in the commission of the tort, or to authorize the doing of it. The employer is, therefore, liable if injury results from work done as he has authorized it to be done," citing the following cases: Robbins v.Chicago, 4 Wall. (U.S.) 657, 679 (18 L.Ed. 527); Water Co. v.Ware, 16 Wall. 566, 576 (21 L.Ed. 485); Ph., etc., R. Co. v. Ph.,etc., Steam Towboat Co., 23 How. (U.S.) 209 (16 L.Ed. 433); Chicagov. Robbins, 2 Black (U.S.) 418 (17 L.Ed. 298).
The defendant's next position is, that there was a variance between the allegations and the proof; but we think the complaint is sufficiently broad in its allegations, when considered under the liberal construction to which it is entitled by our Code, to include a cause of action such as corresponds with the evidence, especially section 5, which is more general in its allegations. Besides, if there was any lack of correspondence between the allegations and the proof, Revisal, secs. 515 and 516, provides how a party may take advantage of it; and when the procedure there presented is not followed, the variance is deemed immaterial, under section 515.
We have carefully examined the questions raised by defendant's exceptions to evidence, and we find nothing that should induce us to reverse this judgment. We do not agree with defendant as to the nature of the questions, and the influence of the answers to them, upon the jury. In no view, we think, were they of sufficient importance to substantially affect the result. *Page 246 
The case was ably and forcefully argued by Mr. Moore for the defendant, but we have been unable to discover any fatal error, after carefully weighing the facts appearing in the record and the learned argument of counsel. We conclude that the case has (229) been correctly tried. It was submitted to the jury under a clear-cut charge from Judge Lyon, which was certainly not unfavorable to the defendant. We therefore affirm the judgment.
No error.
Cited: Muse v. Motor Co., 175 N.C. 470; Royal v. Dodd, 177 N.C. 212;Matthis v. Johnson, 180 N.C. 133; Stone Co. v. Texas Co., 180 N.C. 559;Newton v. Texas Co., 180 N.C. 566; Greer v. Construction Co., 190 N.C. 635;Lumber Co. v. Motor Co., 192 N.C. 381; Drake v. Asheville, 194 N.C. 10;Inman v. Refining Co., 194 N.C. 569; Teague v. R. R., 212 N.C. 34;Whichard v. Lipe, 221 N.C. 57; Hayes v. Elon College, 224 N.C. 15; Spiveyv. Newman, 232 N.C. 284.